### The TOWN OF POULTNEY *vs.* the TOWN OF WELLS.

An action of *indebitatus assumpsit*, for money had and received, will lie against a corporation aggregate, the same as against an individual.

By the charter of the township of *Wells*, the *land* is granted to those persons whose names are entered on the back of the charter; but the grant of *town privileges* is not necessarily to them, but to such persons as did, or should thereafter be *inhabitants of said town.*

The right of land in said town, for the benefit of schools, is, by the charter, placed under the care of the inhabitants of the town, without reference to their being owners of the soil, or original grantees. And the legislature can exercise no power over it, to vary the appropriation, without the consent of the town. This consent must be by those who are inhabitants of the town at the time it is given.

The right granted to the *first settled minister* does not vest until a minister is settled, but remains under the temporary control of the legislature; and the legislature have the power, during such control, to appropriate the avails at their pleasure.

What shall be deemed evidence of the assent of a town to an act of the legislature, affecting the avails of their school lands, so as to bind such town.

Where the legislature, with the assent of a town, has granted a portion of the avails of the school lands in such town, to another town, an action will not lie to recover such portion, until after *demand made*, and, consequently, until demand, the statute of limitations does not begin to run against the right of action.

THIS was an action of *indebitatus assumpsit*, for money had and received. The questions reserved on the trial of the issue, were brought before the Court, on the following case stated.

On the trial of this cause, the plaintiff read in evidence,

1st. The charter of Wells, in which is reserved, on the back of the same, "one share, or full right of land, for the first settled minister of the gospel, and one share for the benefit of a school in said town."

2d. The act of the general assembly, setting to Poultney a part of the township of Wells, passed 31st Oct. 1798.

3d. The plaintiff proved, that there was set to Poultney, by said act, 5542 acres, three quarters and 39 rods; that a part of said Wells, containing 4079 acres, 16 rods, had, previously to the passing of said act, been set off to the town of Middletown, by act of the legislature, and that said Wells originally contained 23040 acres.

4th. Votes of the town of Wells, passed Oct. 9, 1797, and of Poultney, passed 21st Oct. 1797.

5th. That the amount of money received by Wells, from the school right, to the 10th Oct. 1822, was $1269,22; from the first settled minister's right, to the same time, the sum of $530,00.

6th. That the inhabitants, set off to Poultney from Wells, by said act, had ever since paid taxes, voted at freemen's and town meetings in Poultney, and have never been taxed, or voted in Wells.

7th. That, previous to the commencement of this suit, Poultney made a demand of Wells, for their share of the publick money arising from said school lands, and first settled minister's right, and that Wells refused to pay the same.

8th. The plaintiff also read in evidence, acts of the legislature respecting the first settled minister's right, passed Nov. 3, 1798, Nov. 10, 1803, and Nov. 9, 1818.

Rutland,
January,
1826.

Poultney
vs.
Wells.

9th. Votes of the town of Poultney, passed 29th March, 1820, and of Wells, passed 7th March, 1820, appointing committees to settle respecting said school lands, and a vote of the trustees and selectmen of Wells, dated 16th March, 1820.

If the Court should be of opinion, that Poultney is entitled to recover, either for the amount of the said sum arising from the school lands, or for the amount of said sum arising from the first settled minister's right, or for both, judgment is to be entered for said Poultney to recover of said Wells, that part of said sums which shall be in proportion to the whole quantity of lands in the original charter bounds of said Wells, to the part set off to Poultney; or, in proportion to that part of Wells remaining in said Wells, after the part above mentioned was set off to Middletown, to the part set off to Poultney. And if the Court should be of opinion, that said Poultney is not entitled to recover, a nonsuit is to be entered.

The above case is made under this further agreement, that if the Court should be of opinion, that the said plaintiff ought to recover of the defendant, and that the plaintiff is barred by the statute of limitations of any part of the demand aforesaid, that part shall be deducted from the amount, that the Court shall consider the plaintiff would otherwise be entitled to recover.

WM. PAGE, *attorney for plaintiff.*
C. LANGDON, *attorney for defendant.*

The substance of the votes and records above referred to, which are material in the case, will appear in the opinion of the Court.

*Williams,* for the plaintiff town, contended, that they were entitled to recover a proportional part of the avails of the publick lands in Wells, agreeably to the act of the 31st of October. 1798, annexing a part of Wells to Poultney. (*Acts of* 1798, p. 38.) To this end, he insisted, that the legislature had the power to pass the act in question, without the consent of the town of Wells; that towns are publick corporations, created for political purposes, and persons living within their limits, are compelled to become members.—*Argument of Sir Robert Sawyer, attorney general, in the proceedings between the King and the city of London, on a* quo warranto, 3 *State Trials,* 650—1 *Swift's Dig.* 228 —*Story's opinion in Dart. Coll. case,* 342.

The existence of this power, he also inferred: 1st, from the long and continued exercise of it; 2d, that it is among the powers of the legislature, enumerated in the constitution, ch. 2, sec. 9; (*Stat.* 46) 3d, from the decisions of the state courts; and cited the case of the town of Pembroke, mentioned in the argument of the Dart. Coll. case, page 74,---*Portland* vs. *Windham,* 4 *Mass. R.* 384---*Colburn* vs. *Ellis,* 7 *Mass. R.* 89----*Opinion of ch. J. Marshall, in the Dart. Coll. case,* 310.

He further insisted, that all grants made by the publick, to a publick corporation, must be subject to the regulations of the legislature, or the power of the legislature to alter the towns, as the publick good may require, will be abridged.

*Rutland,*
January,
1826

Poultney
*vs.*
Wells.

That all grants made by the publick to a corporation, must have relation to its character, and they cannot make a publick corporation a private one, or prevent the exercise of the legislative power, in regulating it for the publick good.

That an additional territory annexed to a town, increases their burthens and duties, and draws to itself a portion of the publick funds, to which the individuals inhabiting the town before the addition, would be entitled.

That there is no privity between the original grantees of the land and the town; and towns cannot enjoy the benefit of the publick lands, without the aid of the legislature.----*Portland* vs. *Windham*, 4 *Mass. R.* 384, before cited.

That even in the case of a private corporation, if they accept a new charter, or any alteration of their former charter, it is valid.----*King* vs. *Passmore*, 3 *Term R.* 245.

That the vote of Wells, of Oct. 9, 1797, and the vote of Poultney, of the 21st Oct. 1797, and the fact, that the inhabitants of the territory annexed to Poultney, have voted and paid taxes in Poultney, and have not been taxed or voted in Wells, are conclusive evidence of an agreement to, and acquiescence in the act passed 31st Oct. 1798, and the provisions and conditions thereof.

In relation to the amount of damages, he insisted, 1st, that the *school right*, so called, is properly publick land. 2d, that the right for the *first settled minister* must also be considered as publick land, until the settlement of a minister, the fee of which may be considered either *in abeyance*, or as a *base fee*, determinable on the settlement of a minister; (*Pawlet* vs. *Clark*, 9 *Cranch*, 337) that the other grantees have no interest in that right; (*ib.* 324) that it is appropriated for a publick use, by the legislature. ----*Stat.* 196, 197.

That the plaintiff town ought to recover such proportion of the monies arising from the publick lands in Wells, as the quantity of land annexed to Poultney bears to the quantity of land remaining in Wells, after deducting the land set off to Middletown and to Poultney. For the town of Middletown had been previously incorporated, and no part of the publick lands in Wells had been set to it. So that the persons inhabiting that portion of Wells now set to Poultney, would have been entitled to that, if they had not been annexed to Poultney.

He also insisted, that the money might be well recovered in this form of action. (1 *D. Chip. R.* 456) That no part of the claim was barred by the statute of limitations: 1st, because the right accrued in virtue of the act of 1798, and is not subject to the statute of limitations; and 2d, because they could have no claim, against which the statute would run, until they demanded the money, and it was denied them by the defendant town.

That the votes of Wells, passed the 7th of March, 1820, and the vote of the selectmen of Wells, of March 16, 1820, amount to an acknowledgment of the existence of the debt, and rebut any presumption of payment, which might arise from lapse of time.

Rutland,
January,
1826.

Poultney
vs.
Wells.

*Langdon* and *Phelps*, for the defendant town, contended, that the plaintiff town was not entitled to recover:

1st. Because every chartered and organized town in this state is a body politick, and is invested with certain rights and interests, of which they cannot be divested, except by their consent legally expressed, or by conveyance executed under their authority, in a mode pointed out by law, or by legal process in courts of justice.---4 *Wheat.* 636-7 *and* 643-4----2 *Bac. Abr.* 9, 13 ---1 *Blac. Com.* 502.

2d. That by the charter of Wells, *one share for the benefit of schools* in said town, was granted to the proprietors; and, as soon as the town was organized, that right vested in the inhabitants of Wells, in their corporate capacity, *in perpetuam,* for the use of schools in *that town.* And, from the nature of the grant, they could not divest themselves of the right itself, except by forfeiture. That the succeeding inhabitants of Wells have an unalienable and inherent corporate interest in it, and the *use* only can be taken, and appropriated according to the grant, for the support of schools in the town of Wells; and the benefit of that is limited to the inhabitants residing within the legal boundaries of that town.----9 *Cranch,* 43 *to* 47, *Terrett* et al. vs. *Taylor* et al. ----3 *Term R.* 246, *King* vs. *Passmore---4 Wheat* .637 *and onwards, Dart. Coll.* vs. *Woodward.*

3d. That every grant is a contract, and no act of the legislature can impair it; (*Powel on Con.* 6, 7---4 *Wheat. ut sup.*----6 *Cranch,* 136-7, *Fletcher* vs. *Peck*) that the legislature cannot divest the grantees of a right, once granted and vested in them. They can only prescribe a mode by which the grantees may do it. That a grant is not resumable, without the express assent of the grantees, evidenced according to the rules of law.----4 *Wheat.* 3 *Term and* 6 *Cranch,* ut sup.----2 *Blac. Com.* 37----2 *Gallison,* 103---2 *Mass. R.* 143----2 *Conn. R.* 583----7 *Johns. R.* 477.

4th. That town corporations are of a mixed character, to wit, publick, so far as they are the organs of political arrangement and civil jurisprudence, or the depositaries of civil power; but are private, so far as it relates to their perpetuity, immunities and franchises, granted or given them by charter or otherwise.---4 *Wheat.* 668-9 *and* 670---4 *Mass. R.* 389---ib. 539, *Richards* vs. *Daggett*----7 *Mass. R.* 447, *Brunswick* vs. *Dunning* et al.

That the inhabitants of the tract so set off to Poultney, by their separation, relinquished their *corporate* interests and privileges in Wells, the same being incident to the corporation, and indivisible.----*Case of Sutton's Hospital,* 10 *Co. R.* 23.

5th. That the votes of the town of Wells do not show any assent---the vote is, "*shall be annexed to Poultney, for town privileges.*" This is no assent to a transfer of any portion of the corporate property.

They further insisted, that no assent could be inferred from the other facts in the case. No part of the rents have ever been paid to Poultney, but have been refused. And that the legal presumption therefore is, that Poultney has relinquished the

Rutland,
January,
1826.

Poultney
vs.
Wells.

claim, (if any ever existed) by suffering Wells to enjoy the whole for a period of about 32 years, without any demand made.

That the rents of the *minister's right* are out of the question; for the right is not granted to the proprietors, or to the town. That by several acts of the legislature, the *selectmen* of each town in which such lands lie, are constituted *trustees*, to take care of and *lease* the same, till a minister be settled *in such town*, and are made accountable for the rents, to be applied to the use of the *religious societies* in such town. (*Stat.* 196-7-8 *and* 9.) And it would be a violation of trust, in the selectmen of Wells, to pay any part of the rents to Poultney.

They also insisted, that no action on the case, on an implied promise, will lie against an aggregate corporation; and cited *the Alexandria Ins. Co.* vs. *Young,* 1 *Cranch,* 332——*Breckbill* vs. *Turnpike Co.* 3 *Dallas,* 496.

And finally, that if the plaintiff town was entitled to recover of the rents accruing from either right, they were barred of all received antecedent to the 10th of October, 1816, by the statute of limitations.

HUTCHINSON J. delivered the opinion of the Court.

This is an action for money had and received, and comes up before this Court, upon a case agreed upon by the parties. By this case it appears, that the plaintiffs claim to recover in this action, a certain portion of the rents and profits of the school right, and the right chartered to the first settled minister in said Wells, from the time a certain part of Wells was, by act of the legislature of this state, annexed to Poultney.

The right of the plaintiffs to recover, depends upon what the Court shall deem the extent and validity of the statute of October 31, 1798, annexing a part of Wells to Poultney, as above mentioned, in connexion with the votes of both of said towns upon the subject, and the evidence contained in the case of the acquiescence of said towns in said statute.

An objection, however, is raised, that an action on the case, on an implied promise, cannot be maintained against a corporation aggregate. Such were once the decisions; and these decisions necessarily resulted from the principle, that such corporations could bind themselves only by their common seal. But in modern times, the authorized agents of a corporation aggregate bind their corporation by those acts which they perform, in pursuance of their agency; and when they thus act without the use of the corporate seal, the corporation are liable to an action of *assumpsit,* the same as individuals would be, if they employed the same agents to do the same acts. This is fully evinced by the cases referred to by Mr. Chipman, in his note on page 456, vol. 1, and especially by the case cited by the plaintiffs' counsel, on page 459 in said note, taken from *Cranch,* 7th vol. 299th page, to wit: The bank of Columbia vs. the administrator of Patterson. The Court there say, "that wherever a corporation is acting within the legitimate purposes of its institution, all parol

Rutland,
Jaunary,
1826.

Poultney,
vs.
Wells.

contracts, made by its authorized agents, are express promises of the corporation," "and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie;" and they cite many cases, in support of these principles.

In the present case, the money in contest is in the hands of the defendants, has been demanded of them by the plaintiffs, and they have refused to pay it to the plaintiffs. If the plaintiffs have established their right to this money, as it is not evidenced by any specialty, or any corporate act under seal, reason and authority both concur to warrant their recovering the money in this form of action.

In examining the plaintiffs' claim, it appears that the town of Wells was chartered by the governour of the late province of New-Hampshire, on the 15th of September, 1761, to sixty-four proprietors, named on the back of said charter, together with the usual publick rights. By said charter, said tract of land granted is to be divided into seventy equal parts, and the granting expression as to two of those parts, is as follows: "one share for the first settled minister of the gospel, and one share for the benefit of a school in said town."

It also appears, that the town of Wells, on the 9th of October, 1797, passed a vote, that the north part of said Wells, from Middletown south-west corner, due west, to the line of the state, be annexed to Poultney, for town privileges; and that the town of Poultney, on the 21st of the same October, voted to receive the north part of Wells, from Middletown south-west corner, to the line of the state, to be annexed to this town, with the privileges belonging to them by the charter of said town."

In accordance with these votes of Wells and Poultney, and, without doubt, in consequence of the same, the legislature of this state, on the 31st of October, 1798, passed an act, annexing to Poultney the said north-west part of Wells, describing the same as described in said votes of said towns, and expressly enacting "that the inhabitants of said north-west part of Wells, so annexed to the town of Poultney, should be forever thereafter entitled to the same privileges and immunities, in common with the other inhabitants of said Poultney;" and then, in the second section, makes a provision, on which the plaintiffs rely as the foundation of their right to recover. That provision is as follows, to wit: "that the town of Poultney be, and it is hereby declared, forever hereafter to be entitled to such part of the rents, profits, and privileges, of all the publick lands in the town of Wells, as shall be in proportion to the quantity of lands in and by this act annexed to the town of Poultney as aforesaid." The case further shows, that ever since the passing of said act, the inhabitants residing upon the land thus annexed to Poultney, have been considered as belonging to Poultney, have enjoyed all town privileges there, and paid taxes there, and have never been taxed in Wells, nor claimed or enjoyed town privileges there.

24

Rutland,
January,
1826.

Poultney
vs.
Wells.

It appears necessary, in the investigation of this subject, to consider in what shape the charter has left the publick rights from which have arisen the funds now in contest, and also the proceedings of the two towns, and of the legislature, upon which the plaintiffs found their claim.

By reference to the original charter of the town of Wells, we perceive, that the grant of the land was made to those whose names were entered on the back of the charter, and the publick rights are there designated; but the grant of town privileges is not made to those grantees as such, but to the persons who should inhabit the town. The words of the charter creating the franchise, are as follows, to wit: "and that the same (to wit, land) is hereby incorporated into a township, by the name of Wells, and the inhabitants that do or shall hereafter inhabit said township, are hereby declared to be enfranchised with, and entitled to, all and every privilege and immunity, that other towns within our province by law exercise and enjoy." The part of the charter which relates to the school right exclusively, makes of it a perpetual appropriation, "for the benefit of schools in said town." This places it under the care of the inhabitants of the town, without reference to their being owners of the soil, or original grantees. This at least is the case after the land is divided into severalty. The Court are unanimous in the opinion, that the school right, thus appropriated by the charter, belongs to the town of wells; so that the legislature can exercise no power over it, to vary this appropriation, without the consent of the town, and this consent must be by those who are inhabitants of the town, at the time the assent is given.

The other right in question, is given by the charter to the first settled minister. This supposes a settlement then future, for the grant was of a territory wholly unsettled, and the Court consider this right as not vested in the minister, while none was settled, but as under the temporary control of the legislature. And so the legislature considered it; and, by their several acts referred to in the case, have appropriated the use and avails to the use of the town, until a minister shall be settled.

Going thus far, and no farther in the case, the avails of these two rights for the time being, would belong to the town of Wells; for it does not appear by the case that there has been any minister settled there. But the act of the legislature, annexing part of Wells to Poultney, has undertaken to give to Poultney a portion of the avails of these two rights. Having already decided that this would be unavailing, as it respects the school right, if done without the assent of the town of Wells, it is necessary now to consider whether such assent has been given. And I would observe, that the assent, whatever it is, applies equally to both rights, though it may not affect the decision with regard to the minister right.

The said act of the legislature expressly provides, that the inhabitants of that part of Wells so annexed to Poultney, should forever thereafter be entitled to the same privileges and immu-

nities, in common with the other inhabitants of said Poultney.
This, it will be seen, gave them a right to vote in all town and
freemen's meetings in the town of Poultney, to a share of their
school funds, and to a support also, in case any of them should
become paupers; and made them liable to be taxed in the town
of Poultney, for all town purposes, and discharged them from all
such connexion with Wells.   The act then proceeds expressly
to give Poultney a right to such part of the rents, profits and
privileges of the publick lands in said Wells as should be in pro-
portion to the quantity of the land so taken from Wells and an-
nexed to Poultney.

The vote of the town of Wells would not seem, of itself, to
warrant all this.   Their vote is, that this territory "be annexed
to Poultney, for town privileges."   This vote passed October 9,
1797, and it was probably made known to the town of Poultney
at their meeting, holden on the 21st day of the same October,
with a view to their concurrence.   The town of Poultney then
passed a vote, expressing their willingness to receive this part
of Wells, but, instead of concurring in the limitations contained
in the vote of the town of Wells, they annex their own condi-
tions, which are, that they come "with the privileges belong-
ing to them by the charter of said town of Wells."   At the date
of this last vote, the legislature were in session, and the probabil-
ity is, that the votes of both towns were forwarded to the legis-
lature, in aid of a petition then before the house, which was laid
over till the next year, when the act in question passed.   Wheth-
er this were so or not, the case shows a perfect acquiescence,
on the part of both towns, in this act of the legislature, in all
respects, at least unless these funds be excepted.   The inhabit-
ants living on the part of Wells thus annexed to Poultney, have
been considered as belonging to Poultney, ever since the pass-
ing of said act; have voted and paid taxes in Poultney, and have
never done the same in Wells: and further, that the town of
Wells has never claimed taxes of them.   But it is urged, that
the inhabitants of Wells have never acquiesced in the loss of
these funds, but have refused to let them pass to Poultney.   The
case states no fact of dissent in this respect, till the overtures
for a settlement of this controversy, shortly before the com-
mencement of this suit.   The inhabitants of Wells must always
have known what conditions were attached to said vote of Poult-
ney, and what were the provisions of said act.   They must have
known, too, that the inhabitants of this territory were consider-
ed as belonging to Poultney, and were enjoying all the privileg-
es enjoyed by the other inhabitants of Poultney; that they were
sharing the school monies of Poultney, if any there were, and
their not claiming them as inhabitants of Wells, in any respect,
for more than twenty years from the passing of the act, is an
acquiescence in the act, with all its appendages, especially those
appendages without which the town of Poultney had not agreed
to receive them.   Moreover, all these circumstances furnish a
strong ground of presumption, that the full assent of Wells was

had to the act, in all its extent, when it passed, though the record of it is not now to be found. With such assent on the part of Wells, the Court consider the act of the legislature binding, to transfer to Poultney the right to the funds now claimed.

But it is urged that the statute of limitations furnishes a bar to this claim, in whole or in part. The Court are relieved from the necessity of deciding this point, by an ellipsis in the case stated. It does not appear by the case, that any of the monies were received more than six years before the commencement of the action. The Court, however, would not dispose of so important a case upon such a point, without an amendment of the case, on such terms as would make good the opposite party. But, supposing the case as the parties have treated it, the Court consider the action could not be supported, without a previous demand of the money. Therefore, until such demand, that statute did not begin to run.

One question further remains: that is, what portion of these funds belong to Poutlney? The Court consider that the plaintiffs should recover such portion as these inhabitants, thus annexed to Poultney, would have virtually enjoyed, if not thus annexed. And it is now agreed, though not stated in the case, that, when a former part of Wells was annexed to Middletown, all the publick lands remained to Wells, which left Wells 18,960 acres and 144 rods of territory, with all the publick rights at the time of the annexing to Poultney ; and the quantity annexed to Poultney, was 5542 acres three fourths, and 39 rods. The sums received by Wells on the school right, amount to $1269,22, and on the minister right, $530, making $1,799,22. The plaintiffs are entitled to recover such a portion of said last sum, as said 5542 acres, three fourths 39 rods bear to said 18,960 acres and ·144 rods, with interest on the same from the time the demand was made. The counsel can agree upon a cast, or the clerk will make it according to the above proportion.

*Wm. Page* and *Chs. K. Williams,* for the plaintiff town.

*Chauncey Langdon, J. Clark,* and *S. S. Phelps,* for the defendant town.