## Lessee of Daniel Dawson, guardian of John Knight and Isaiah Knight *against* Jacob Morris.

Though a sheriff's deed has been acknowledged after a rule obtained to shew cause why the sale should not be set aside, the party or his creditors may try the fairness of the same before a jury. A person who had released his claim to lands, allowed under certain circumstances to impeach the title.

EJECTMENT for a messuage and lot of ground on the north side of Filbert street and west side of Delaware Thirteenth street.

It was admitted, that Jacob Grubb was seised of the premises, and that they were sold under a regular judgment and execu tion. On the 22d April 1799, Jonathan Penrose, esq. sheriff, conveyed the same to John Knight now deceased, in considera- tion of $215, and the deed was acknowledged in open [*342 court on the 2d June 1800. On the 24th July 1799, a rule of the Court of Common Pleas was obtained, that John Knight should shew cause why the sale should not be set aside ; and on the 12th April 1800 the following entry was made on the docket : " On argument and motion of Mr. Armstrong, the sale " is ratified and confirmed by the court."

The defendant claimed under a subsequent sheriff's sale by virtue of regular judgments and executions, and purchased by the agreement of the judgment creditors, in trust for their use. In March 1802, Israel Israel, esq. sheriff, conveyed to him the premises, in consideration of 250 dollars, and the deed was ac- knowledged on the 17th March in that year. On the 17th June 1803, a trial was had at *Nisi Prius*, and Morris obtained a verdict against Knight, on which judgment was entered in September term following.

The defendant's counsel offered to shew, that the first sale was fraudulent and covinous, through the instrumentality of Thomas Armstrong, an attorney of this court, and that John Knight, the purchaser thereat (father of the two minors, whose guardian had brought this ejectment) was privy thereto ; but at all events, he

4 YEATES—21

knew the management that had been practised before he paid the consideration money.

The plaintiff's counsel opposed this testimony. The fairness of the sale was a proper subject of inquiry in the Court of Common Pleas, before the deed was acknowledged. The party objecting chose his jurisdiction, and is thereby concluded. An issue might at that time have been prayed. Here was no surprize. If money had been brought into court, and the court had directed the distribution of it, all the parties interested would have been bound. The decree of a court is conclusive on the subject matter, if they have jurisdiction. Bull. 244. Carth. 225. This point was not agitated on the former trial.

It was answered, that it did not appear at whose instance the rule to shew cause was entered. In point of fact no witnesses were examined, and the hearing, if any, was on one side. We assert and will prove, that the acknowledgment was obtained, by keeping a material witness out of the way. A recovery by covin is of no effect ; and so of all other acts. 3 Co. 78.

YEATES, J. The cases cited, that the judgment of a court having competent jurisdiction of the subject matter, is final and conclusive on the question immediately decided, do not appear *to me to be analogous to the case before. the court. *343] Under the act of 1705, § 4, the sheriff is directed " to " give the buyer of lands a deed duly executed and acknowledg-. " ed, as had theretofore been used upon the sheriff's sale of " lands." 1 Dall. St. Laws 69. The point decided in the Common Pleas was, that the sheriff's deed should be admitted to be acknowledged ; and the act of the court gave the deed no further or other validity, than if it had been acknowledged without opposition. In the latter case such sales have been frequently impeached, and have always been held to rest on their own fairness and merits. But was the law even otherwise, if the original defendant whose lands were sold, had opposed without success the receiving of the acknowledgment of the sheriff's deed, it could not possibly be conclusive on his creditors who were no parties thereto ; nor, if one or more of the creditors were parties to the opposition, could it bar other creditors, who did not interfere therein, and might be furnished with new evidence to impeach the sale. In the present instance, it is not shewn on what grounds the rule to shew cause was obtained, who were the parties who procured it, or whether any evidence was offered to the court upon the hearing to affect the sale.

I therefore think the decision of the Common Pleas not binding and conclusive on the now defendant as to the fairness of the sale ; and that it is competent to him to give in evidence to the jury the facts and circumstances from which the fraud in the sale is inferred, that they may judge thereupon. And the case

[Dawson's Lessee v. Morris.]

is much stronger, by the present dispute being confined to the heirs of the original purchaser.

Jacob Smith was then called as a witness, but was excepted to, as being interested. The plaintiff's counsel produced a conveyance from Jacob Grubb to the said Smith, of the premises in question, in consideration of 1200 dollars, dated 8th December 1797, antecedent to any judgments obtained against the former ; and an assignment thereon by Smith to Knight, in consideration of 60 dollars, dated April 22, 1799.

On inspection of the assignment, no covenant either express or implied, appeared to have been inserted therein, which made him responsible in any event : but it was contended, that it was against the policy of the law, to allow a person to contravene an instrument executed by himself.

The defendant's counsel urged, that Knight's buying in this claim, on the day of the date of the sheriff's deed, and two days after the public sale, was one of the circumstances relied upon to shew fraud in him. The voluntary deed to Smith, though it contained a consideration of $1200, was intended to defraud *creditors, and was puffed at the sheriff's sale, to prevent the premises from going off at their full value : to extin- [*344 guish the claim of Smith and to close his mouth, the paltry sum of $60 is paid him, which was a debt really owing to him by Grubb. Smith is not compellable to be sworn, but he may give testimony against his right if he chooses ; for he then swears against himself. 2 Lord Ray. 1008. And in a late case, it has been adjudged, that in a suit upon a bill of exchange against the acceptor by an indorsee, the payee may be a witness to prove that the bill was void in its creation. 7 T. R. 601.

YEATES, J. It was formerly held, that no man should be allowed to give testimony to invalidate a deed or instrument which he had signed. 1 T. R. 300. 2 Atky. 228. This rule was afterwards confined to negotiable instruments ; 3 T. R. 32, 34, 36, and lately, the rule itself has been questioned ; and contrary determinations have since taken place. 5 T. R. 570. 7 T. R. 602. Peake's Rep. 6. 52. 224. The law has undergone many changes on this point of evidence. For my own part, I feel great reluctance against a person swearing to destroy the effect of his own deed.

This however does not seem to me, to be such a case. The assignment is a mere release of Smith's right under the deed, and comes before the court under circumstances of great suspicion, not only from the great disproportion between $1200 and $60, but that even now the plaintiff does not claim title under it, but makes use of it merely to repel Smith from giving testimony. This evinces the intention of the contracting parties, that the assignment was only intended to bar any future claim by Smith to the house and lot. If however the case is within

[Engles et al. *v.* Bruington.]

the rule, the latest authorities warrant the admission of the witness.

Smith was sworn accordingly, and the evidence respecting the fraud in the first sale, was fully gone into. After a very full hearing, the jury retired, and returned with a verdict for the defendant in twenty minutes.

Messrs. Hallowel and Milnor, for the defendant.

Messrs. J. Hemphill and S. Levy, for the plaintiff.

Cited and explained in 1 W. & S. 527, where it was decided that a sale made after the return, although continued by an ajournment from a day prior, is void, and vests no title in the purchaser.

Cited in 14 Pa. 79 where there is a full discussion as to what defects may be cured by the acknowledgment of a sheriff's deed.