## Case No. 3,193.

### COOPER v. GALBRAITH.

[3 Wash. C. C. 546.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1819.

SHERIFF'S SALE—INADEQUACY OF CONSIDERATION —PURCHASE BY JUDGE—EJECTMENT BY PURCHASER—PLEADING—PROOF—DEFENSES—JURISDICTION—CITIZENSHIP.

1. Ejectment for a tract of land purchased at a sheriff's sale, under a venditioni exponas against the defendant.

2. The plaintiff in ejectment must show a legal right to entry in general; and unless under special circumstances, the defendant should be let in, to prove the title an equitable one.

3. No person can recover or defend himself against his own grant or covenant; nor can any one controvert, against his own acts, though not

by deed, a title which he has thus acknowledged.

4. In an ejectment by a second mortgagee, against the mortgagor, the latter cannot set up the title of the first mortgagee.

5. The sheriff is empowered, by law, to convey to the purchaser under an execution, all the right, title, and interest of the defendant; and he acts as the defendant's attorney, appointed by law to sell and convey the land.

6. In an ejectment, by the purchaser at a sheriff's sale, against the defendant in the execution, or those who may claim under him, the plaintiff need not show any other title than the judgment, execution, and the sheriff's deed; and this title the defendant cannot controvert.

7. Citizenship, when spoken of in the constitution, in reference to the jurisdiction of the courts of the United States, means nothing more than residence.

[Followed in Butler v. Farnsworth, Case No. 2,240. Cited in Prentiss v. Brennan, Id. 11,385; Cheever v. Wilson, 9 Wall. (76 U. S.) 123; Doyle v. Clark, Case No. 4,053; Poppenhauser v. India Rubber Comb Co., 14 Fed. 708; Ward v. Blake Manuf'g Co., 56 Fed. 440.]

8. If a citizen of one state thinks proper to change his domicil, and to remove with his family, if he have one, to another state, with a bona fide intention to reside there, he becomes instantly a citizen of that state, and may sue in the courts of the United States as such.

[Cited in Burnham v. Rangeley, Case No. 2,176; Kemna v. Brockhaus, 5 Fed. 764; The Garland, 16 Fed. 288; Morris v. Gilmer, 129 U. S. 328, 9 Sup. Ct. 293.]

9. Fraud and official misconduct are not to be presumed, but should be proved; and it is not a fraud, or illegal, in a judge, who has presided in the court in which the judgment was rendered, to purchase property sold under an execution issued upon such judgment.

10. Inadequacy of consideration is no objection to a sale made under an execution; provided the sale was legally and fairly made.

[Cited in Clark v. Trust Co., 100 U. S. 152.]

This was an ejectment for land in the county of Northumberland, called the Limestone Lick tract. This land was purchased at sheriff's sale by George Lang, on the 17th of November 1807, under a venditioni exponas, and by regular conveyances, the title to the said land became vested in the lessor of the plaintiff. Possession was obtained by the purchaser some time after the sale, and continued in him until about the year 1812; when the defendant [Galbraith] entered into a part of the land for which this ejectment is brought. It was proved, that the lessor of the plaintiff [Cooper] was a naturalized citizen of Pennsylvania, and resided in this state, in the county of Northumberland, until the year 1816. In September 1815, he resigned his professorship in the College of Carlisle, with an intention, as he declared, of removing to New-Orleans, with a view of engaging in the practice of the law. About the same time, he broke up his family establishment, disposed of his furniture, and remained, with his family, for some time, at the house of a friend, as a visitor. He afterwards relinquished his intention of going to New-Orleans; and, in the autumn of the following year, he removed, with his family, consisting of his wife, two children, and his wife's sister, to Camden, in New-Jersey, on the opposite side of the river to Philadelphia; where he rented a house for a year, and continued to reside there until November 1817; when he removed to Philadelphia, where he has ever since resided. In December 1816, he was elected a professor in the College of Philadelphia, where he delivered a course of lectures, coming to the city for that purpose, and returning in the afternoon to his family in Camden.

The defendant offered in evidence to show, that the title to the land in question, when purchased by George Lang, was merely an equitable estate; which, it was contended by his counsel, is insufficient to support an ejectment in this court.

This evidence was objected to, upon the ground that a defendant, whose land has been sold under an execution, and those claiming under him, will not be permitted, in an ejectment, to recover the possession, to impeach the title, or to show an outstanding better title in a third person. The plaintiff need only show the judgment, the execution, and the sheriff's deed. 3 Caines, 188; 10 Johns. 223; 2 Yeates, 443; 5 Binney, 270; 4 Johns. 22; 2 Binney, 468. The legal right of possession which the defendant had, together with all his right and title to the land, passed by the sheriff's deed to the purchaser, which, as between the purchaser and the defendant in the executions, or those claiming under him, is sufficient in ejectment. The case of Carson v. Boudinot [Case No. 2,462], which will be relied on by the other side, does not contravene this doctrine; because Boudinot, the defendant in the ejectment, was not the defendant in the execution; nor did he claim under that defendant;—the legal estate was in Boudinot, and the equitable estate of the defendant in the execution, which alone was sold, was derived under a contract with the defendant in the ejectment.

In support of the evidence, it was contended, that the ground upon which all the decisions which have been read proceed, are, that the defendant in the execution is considered, quasi a tenant holding over; and therefore, he cannot deny the title of his landlord. But the reasons which govern those cases, do not apply to this; because it appears, that the defendant relinquished the possession for about four years, and that he afterwards re-entered. Whether his re-entry was tortious, or under a claim of title, is immaterial. The privity of landlord and tenant was destroyed by his relinquishment of possession; and he has now a right to stand upon his newly acquired possession, and to call upon the lessor of the plaintiff to show a legal right of entry; an equitable title will not do in this court, as has been repeatedly decided. The counsel referred to the act of assembly of the 6th of April, 1802, giving a speedy remedy to purchasers at sheriff's sales

to recover the possession. They also relied on the case of Carson v. Boudinot·[supra].

Binney & Chauncey, for lessor of plaintiff.
Rawle & Tilghman, for defendant.

WASHINGTON, Circuit Justice, delivered the opinion of the court.

The general rule is undeniable, that the plaintiff in ejectment, must show a legal right of entry, to entitle him to a verdict; and that, if his title appear to be merely equitable, he does not maintain his action. If, then, the defendant is permitted by the rules of law, to disclose the real facts of the case, and to avail himself of defects in the title of the lessor of the plaintiff, by showing that that title is merely equitable, or is inferior to some other outstanding title in a third person; the evidence now offered ought to be received.

The question is, can the defendant oppose the title of the plaintiff's lessor, claimed under the sheriff's deed, by showing that the title of the defendant, at the time of the sale, was merely equitable, or was for any other reason defective? Let this question be considered under the following aspects: 1st, as if this deed had been made by the defendant himself; and, 2d, as made by the sheriff.

In the first case, it is clear, that this defence would have been inadmissible, upon the principle, that a man cannot recover in ejectment, nor defend himself against his own covenant or grant. He is estopped by his own act, from saying that his title was defective, when his deed professes to pass a good title. Upon a similar principle, a man will not be permitted, against his own act, though not by deed, to controvert the title which he has thus acknowledged; as if one man came into possession of land, by permission of another, he thereby admits the title of that other; and, in an ejectment to recover back the possession, he cannot question it. Upon this principle it is, that, in an ejectment by a second mortgagee against the mortgagor, the latter cannot protect his possession, by setting up the outstanding legal title in the first mortgagee; 3 Burrows, 1416; 4 Johns. 216; 1 Term R. 758. And in an ejectment by the lessor against his lessee, or any person claiming under the lessee, the defendant will not be allowed to set up a defect in the title of the plaintiff, or to show an outstanding title in a third person. Driver v. Lawrence, 2 W. Bl. 1259; 12 Salk. 347; 10 Johns. 358, 292; Doe v. Clarke, 14 East. 488; 3 Caines, 188. The doctrine maintained by these decisions, does not in any manner infringe upon the rule first stated, that the plaintiff must show a legal right of entry; because a conveyance by a person in possession, passes, prima facie, a legal estate; which the defendant, being estopped by his own act from controverting, by showing that he only could convey an equitable estate, no

such defect in the plaintiff's title does or can appear; as between those parties, the plaintiff's title appears to be founded upon a legal right of entry.

2. The sheriff is empowered by law, to convey by deed to the purchaser, under an execution, all the right, title, interest, and estate of the defendant, as fully as the defendant himself, or an attorney empowered for that purpose by him, could have done. The officer, in fact, acts as such attorney, appointed for that purpose by law. The purchase money is paid to the defendant, in the execution, or is applied to his use. in discharge of his debt; between whom and the purchaser, the law raises a contract, in like manner as if the conveyance had been made by him. The cases cited by the plaintiff's counsel, are full to the point, that a purchaser under an execution, in an ejectment against the defendant in the execution, or one claiming under him, need not show any other title than the judgment, execution, and sheriff's deed; and that the defendant will not be permitted to controvert such title, by showing it to be defective, or by setting up a better outstanding title in a third person. To these cases, may be added the case of Doe dem. Da Costa v. Wharton, 8 Term R. 2. The case of Carson v. Boudinot [supra], in this court, was that of an ejectment, brought by the purchaser of a mere equity, under the sheriff's sale, not against the debtor, or a person claiming under him; but against the owner of the legal estate, under whom the debtor claimed an equitable estate. It is therefore consistent with all the cases that have been referred to. But it is contended, by the defendant's counsel, that the present case differs from those which have been cited, in the circumstance, that the lessor of the plaintiff had the full effect of his purchase, by having had the possession of the premises; and that the defendant, having afterwards gained the possession, has a right to rely upon that, until the lessor of the plaintiff has shown a legal right of entry in himself. The difference in point of law, produced by this circumstance, is not discerned by the court. By resigning the possession at one time, and afterwards regaining it, the defendant does not cease to be the same person, whose entire interest in this estate was conveyed by the sheriff, and subject to every disability which that conveyance imposed upon him. If the conveyance had been made by himself, instead of the sheriff, it is obvious, that, against his own act, he would be as much estopped to set up a defect in the title he had passed to the plaintiff in this case, as he would have been had he refused at first to surrender the possession. The disability to make this defence is so firmly attached to him, and to all those claiming under him, that he cannot shake it off by any device of this kind. Having shown that there is no difference between a sheriff's deed regularly made, and a deed by the defendant himself,

the same conclusion follows. If the defendant had entered upon this land, under a title better than that which the plaintiff's lessor obtained under the sheriff's deed, afterwards acquired, he might certainly have availed himself of it in this ejectment. The opinion of the court, then, is, that the evidence offered ought not to be admitted.

The objections made by the defendant's counsel were, 1st. That the lessor of the plaintiff, notwithstanding his temporary removal to the state of New-Jersey, continued to be a citizen of this state, and therefore this court has not jurisdiction of the case. That, although his family resided in the former state, during a year prior to the institution of this suit, and the plaintiff generally returned to Camden at night; still his professional duties, as a member of the university, were performed in this city, and here he spent his days during a great part of that year. 1 Maule & S. 103; 5 Ves. 787. 2d. The fieri facias, under which the sale of the land was made, commanded the sheriff to levy on the real estate of the defendant, in case he had no personal estate; and the sheriff not having returned that the defendant had no personal estate, it does not appear that he had any authority to serve and sell his land; and consequently, the sale was void. The deed of the sheriff is not even prima facie evidence, that all proper steps were pursued by the officer, to justify the sale. [Williams v. Peyton] 4 Wheat. [17 U. S.] 77; 2 Bin. 231; 4 Yeates, 341. 3. There is no evidence that the sale of this land was adjourned to the 17th day of November, when it was sold; and the 16th having been the day mentioned in the sheriff's advertisement, the sale could not legally take place on any other day, without a new advertisement. 4. On the merits of the case, it was contended, that the lessor of the plaintiff was the presiding judge of the court in which this judgment was rendered; and it appears in evidence, that he purchased an interest in that judgment, and was concerned with the nominal purchaser and others in the purchase of this land under the execution;—that this conduct amounted to a breach of his official duty; and, in short, that the whole transaction was tainted by such marks of fraud, imposition, and misconduct, as ought to invalidate the purchase.

It was answered, by the plaintiff's counsel,—1. That the evidence in the cause is complete, to show an abandonment of Pennsylvania, and a bona fide removal to the state of New-Jersey. 2. The act of assembly of this state, passed the 13th April, 1807, made no other alteration in the law of 1705, than to forbid a ca. sa. to issue where the plaintiff had personal or real estate; and the act of 1705 was equally imperative, that the real estate was only to be levied upon in defect of the personal. Yet, during the course of a century, the return of the fieri facias has uniformly been similar to that under

which this land was taken in execution; and the doctrine contended for on the other side, if upheld by the court, would uproot most of the landed titles in this state. The protection of the real estate against seizure and sale, where there is personal property, is a privilege intended for the advantage of the debtor. If he chooses to waive it, he is at liberty to do so, either expressly or by implication. In this case, he has done so expressly, by an agreement made in August, 1807; that if he did not pay the executions which had been levied on this land, and also on the Beaver Dam tract, in four weeks, the land might then be sold. This agreement amounts to an acknowledgment that there was no personal property; or, if there was, it is a waiver of the defendant's privilege of insisting that his personal property should be first seized and sold; and he thereby consents, unconditionally, to the sale of the land, if the executions should not be satisfied within the time mentioned. Cases cited: 8 Johns. 365; 1 Johns. 45; 4 Yeates, 22. 3. This objection is contradicted by the record; which states, that this land was offered for sale on the 16th and adjourned over till the succeeding day. 4. The argument, under this head, proceeded principally upon the evidence given in the cause, which was voluminous.

WASHINGTON, Circuit Justice, charged the jury:

The question of jurisdiction is first to be considered. It is composed of law and fact; and as soon as the latter is ascertained, the question is relieved from every difficulty. Citizenship, when spoken of in the constitution in reference to the jurisdiction of the courts of the United States, means nothing more than residence. The citizens of each state, are entitled to all the privileges and immunities of citizens in the several states; but to give jurisdiction to the courts of the United States, the suit must be between citizens residing in different states, or between a citizen and an alien. If a citizen of one state should think proper to change his domicil, and to remove himself and family, if he have one, into another state, with a bona fide intention of abandoning his former place of residence, and to become an inhabitant or resident of the state to which he removes; he becomes, immediately upon such removal, accompanied with such intention, a resident citizen of that state, and may maintain an action in the circuit court of the state which he has abandoned, or in that of any other state, except the one in which he has settled himself. Time, in relation to his new residence, occupation, a sudden removal back to the state he had abandoned, after instituting a suit in the circuit court of that state; and the like; are circumstances which may be relied upon, to show, that his first removal was not bona fide, or intended to be permanent; but they will not be suf-

ficient to disprove his citizenship in the place of his new domicil, and to exclude him from the jurisdiction of the circuit court for the district in which he had formerly resided; if the jury are satisfied, from the evidence, that his first removal was bona fide, and without an intention of returning. And, if the jury be so satisfied, the jurisdiction will not be ousted, though it should appear, that one of the motives of the plaintiff in removing, or indeed his only motive, was to enable him to bring a suit in a court of the United States, sitting in the state he had removed from. The circumstances to prove a bona fide intention in the lessor of the plaintiff, to change his domicil, are very strong. He was the professor of chemistry, in the College of Carlisle; the salary was small; and it is probable, insufficient to support his family. He spoke to his friends, at different times, of his determination to remove to New Orleans, or to Alabama; and there to prosecute the practice of law. He accordingly resigned his professorship, sold his furniture, broke up his family establishment; and, after spending some time in the family of a friend, as guests, he rented a house for a year, in Camden, and there re-established himself and his family. It was after this step was taken, that he was elected a professor in the university of this city; where he was seen in the forenoon attending to his duties; and in the evening he returned to his family. His occupation in Philadelphia, under these circumstances, is not of itself sufficient to disprove his having been, at the same time, a resident citizen of the state where his family was. In Hylton's Lessee v. Brown [Case No. 6,981], in this court, the case was, that Joseph Griswold, who resided with his family in New-York, came to Philadelphia, with his son, in order to establish him here as a distiller, and to instruct him in that art. He continued here, engaged in that business, for eight or nine months, returning at intervals, during that period, to visit his family; and, after he had completed the business which caused his visit to this city, he returned to his family in New-York, and there remained. The court decided, that the temporary abode of Griswold in Philadelphia, without his family, for a special purpose, with the animo revertendi always continuing, did not make him an inhabitant of this state.

Having thus stated what are the principles of law which must govern this case, the jury will decide, whether, upon the evidence, the removal of the plaintiff to New-Jersey was bona fide, and with intention to become a resident and inhabitant of that state.

2. & 3. The answers given to these objections, by the counsel for the plaintiff, are entirely satisfactory. No case was produced, in which it has been decided by any court of this state, that it is necessary for the sheriff to return on the fieri facias, that the defendant has no personal estate. This is a matter which must always be within the defendant's own knowledge; and it would seem reasonable, at least, that if, in point of fact, he has personal property, and intends to object on that account, to the levy on his real estate, he should make it before the court from which the execution issued. But be this as it may, there is strong evidence in this case, of the defendant's consent that the land should be sold, upon a certain event which took place. This amounted to a waiver of the objection, by which the defendant ought to be bound.

4. Upon the merits of this cause, we can do no more than lay down a few principles of law, which ought to govern the jury, in the decision which they may come to. The lessor of the plaintiff is charged with judicial misconduct, and gross fraud, in acquiring the title on which this action is founded. Let it be premised, that fraud and misconduct, of the gross nature imputed to Mr. Cooper, are not to be presumed; but the reverse. He who makes these charges, must establish them by evidence to your satisfaction. It should also appear, that the fraud or misconduct imputed to him, was of a nature to injure the defendant, and was applicable to the particular subject which you have to decide. We understand from the evidence, as well as from the admission of the defendant's counsel, that, whatever interest the plaintiff acquired in the execution, under which this land was sold, was subsequent to the time it was issued; and that no question respecting that execution, or the sale of the Limestone Lick tract, was ever brought before the court of which the plaintiff was a judge, until the 19th of November, when the sale of this tract, and of the Beaver Dam tract, purchased by Mr. Albright, was confirmed; on which occasion, the record states, that Judge Cooper declared he had an interest, and left the bench.

The assertions that a judge cannot legally become interested in an execution, which has issued under the authority of the court of which he is a member, or in property sold under such execution; and that by making such acquisitions he is guilty of a breach of his duty as a judge, do not receive the sanction of this court. It may be indiscreet in him to do so; and it may be unbecoming the dignity of his station to speculate in purchases of this sort, unless under very peculiar circumstances. Whenever a question comes before a court, in which the judge knows that he has an interest of any kind, he violates decorum, morality, and law, by remaining on the seat of justice, and giving an opinion in the case. We should not hesitate in saying, that a claim, founded upon such a gross breach of duty, ought not to receive the countenance of any court. But we do not understand, even from the defendant's counsel, that the plaintiff gave any judicial opinion respecting the sale of this property; or that any question was, at any

time, brought before the court, which called for judicial interposition, except on the 19th, when he very properly retired from the bench. His direction to the sheriff, to sell this land for hard money, was not given judicially, nor could it be; nor does it appear that it was so understood by the sheriff. As a party concerned in interest, he had a right to direct the sheriff to sell for specie, and for ready money. The writ was returnable to that session of the court, and therefore the sheriff had no authority to give credit without the consent of the person interested in the execution; and it is no just or legal ground of complaint against them, that they did not give such consent. As to all that has been said and proved, respecting the sale of the Beaver Dam tract, it can have nothing to do with the question now under discussion,—that land was not purchased by the plaintiff, and is not involved in this controversy.

As little have you to do with the inadequate price at which it is said this land was sold. If the sale was fair, and in other respects legal, inadequacy of value, given for property sold at public auction, was never yet supposed, much less decided, to be a ground for invalidating the sale.

Verdict for plaintiff.