CAMPAU v. GODFREY ET AL.

---

## Daniel J. Campau v. Joseph Godfrey et al.

*Execution-sale of interest of one tenant in common of lands.* Whether, where the interest of one tenant in common in a part only of the lands held in common is sold on execution, the sale can be declared void, except on behalf of his co-tenants, and on its being made to appear that it would injuriously affect their interests, *quære.*

One who should subsequently receive from such tenant in common a deed of the lands so sold on execution, could not maintain a bill to have the execution sale set aside, on the ground of such an interest in a part of the lands not being salable; because, *First*, if the execution sale was good, it must stand; and, *Second*, if it was bad, so upon the same grounds would the grant to himself be; and therefore in either contingency he must fail.

*Excessive levy upon lands, remedy for.* One who complains of an excessive levy upon his lands, should move for relief in the court which issued the execution, instead of proceeding by bill in equity.

Where the statute gives the execution debtor a year in which to redeem, after a sale of lands has been made on execution, and he neglects to exercise the right, the sale will not afterwards be set aside on his application, on the ground that the levy was excessive.

*Redemption in equity after statutory time has elapsed: Negligence.* A party who, through gross negligence or ignorance of the law, fails to redeem lands sold on execution within the time limited by statute, has no claim to relief in equity.

*Heard October 15th and 16th. Decided January 11th.*

Appeal in Chancery, from Wayne Circuit.

The bill in this case was filed to set aside a sheriff's deed of certain real estate executed to two of defendants as void, and as constituting a cloud upon complainants title.

Godfrey, Dean & Brow having a small demand against Theodore J. Campau, put it in judgment and caused execution to be levied on his undivided one-ninth interest in certain lots in Detroit, which constituted a part of the lands belonging to the heirs of Joseph Campau, of whom he was one. This interest was sold to the plaintiffs in execution, who afterwards assigned their certificate of purchase; and their title under it was acquired by Frederick E. Driggs and Milton H. Butler. T. J. Campau suffered the time for redemption to expire without redeeming. Meanwhile the heirs of Joseph Campau, excepting the children of James J. Campau who owned an undivided one-ninth, went on and made voluntary partition among themselves of all the lands belonging to the estate, and set off to Daniel J. Campau the lots in which Theodore's interest had thus been sold on execution. Daniel J. Campau then filed his bill in equity to have the execution-sale declared void on the grounds:

1. That one tenant in common can not sell his interest in the part of the property owned in common, because of the injurious effect it might have upon the interests of his co-tenants in preventing such a partition as they might otherwise have obtained. And this being so, the same reasons would preclude an execution-sale of the interest of one in a part of the lands.

2. That the levy and sale in this case were excessive.

3. That T. J. Campau was induced not to redeem from the execution-sale by negotiations which were taking place between him and the plaintiff's attorney concerning it.

The case was heard on pleadings and proofs, and the prayer of the bill was granted.

*Walker & Kent*, and *T. Romeyn*, for complainants.

1.  The sale under said execution was void as against complainant and the other heirs of said Joseph Campau, deceased, because it was an attempt to sell the interest of Theodore, who was one of several tenants in common in a specific and undivided portion of the estate owned in common.

One tenant in common can not convey his interest in a specific parcel of the land held in common; and such conveyance is void, or at least voidable by the co-tenants, though some of the cases hold that it is good against the party conveying.— *4 Conn. 395; 5 Id. 363; 3 Ga. 492; 24 Me. 482; 12 Id. 198; 14 Grat. 82; 11 Grat. 340; 2 Robinson, 273; 3 Stockton, N. J. 548; 10 N. H. 246; 15 Id. 449; 37 Id. 134; 44 Id. 413; 38 Id. 127; 12 Id. 563; 9 Mass. 34; 12 Id. 348; 12 Id. 474; 13 Id. 56; 24 Pick. 329; 22 Id. 316; 1 Washb. Real Estate, 417 and note; 2 Kent's Com. 368; 2 Greenlf. Cruise, 410 and note.*

The only authorities to the contrary that we have been able to find are.— *2 Ohio, 110; 6 Ohio Cond. p. 468, 161; 2 Harris and Johnson, 421.*

In the following cases it is held that the principle above stated in regard to a sale by one tenant in common applies with the same force to a levy upon the interest of one tenant in common in a specified portion of the estate. Indeed none of the authorities make any distinction between the case of a levy and a voluntary conveyance.— *3 Vt. 399; 9 Id. 138; 2 Id. 244; 2 Id. 243; 28 Id. 183; 18 Me. 229; 21 Pick. 283.*

It will be attempted to distinguish the case at bar from the most of those cited, because in them the attempt was to convey a specific portion of an entire tract held in common, and in this case the levy was upon several of a large number of parcels. No such distinction is found in the books, and there is no foundation in principle for it.

But three of the cases cited were cases of conveyance by one tenant in common of his interest in one or more of

several parcels held in common, and in this respect correspond with the case at bar. — *12 N. H. 563; 24 Pick. 329; 2 Harris and Johns. 421.*

2. The levy in question was void because excessive. Property worth, estimating only a one-ninth interest, from $8.000 to 10.000 was sold for less than $200. If any case can justify the setting aside of a levy on account of its excessive character, this is one.

3. If said execution-sale and the deed thereunder, conveyed any interest to defendants, Driggs and Butler, we ask the aid of this court to enable us to redeem on such terms as shall be equitable.

Theodore Campau, whose duty it was, intended to redeem, and was kept therefrom by mistake and a natural reliance on the honest assurances of the attorney who recovered the judgment, and who was supposed by both to control the redemption. Complainant was guilty of no negligence in relying upon Theodore's promise, and it would be very hard if he must suffer so largely from the negligence of another. There is no doubt of the power of a court of equity to allow the redemption we ask; and certainly such a redemption would be but equitable. — *1 Johns. Ch. 502; 6 B. Mon. 384; 4 N. Y. 554; 33 Ala. 494.*

*John J. Speed,* and *D. C. Holbrook,* for defendants.

1. Where one complains of an excessive levy on his lands, his duty is to apply for relief to the court from whence the execution issued. — *Walk. Ch. 344; 23 Ill. 503; 2 Ind. 99.*

The complainant claims that the estate of Joseph Campau was inherited by his heirs as an entirety, and subject to a partition; that the interest of Theodore J. Campau in separate parcels of the property could not be levied upon, sold and conveyed, prior to such partition; that the sheriff's deed to these appellants may be avoided by complainant, to whom

Theodore released his interest subsequent to the sale under the execution; and that these appellants may be required to convey to him any interest that they may have acquired under the sheriff's deed.

Had the estate consisted of a single parcel, the conveyance by the sheriff of any specific portion thereof, or of Theodore's interest in any specific portion described by metes and bounds, might have been avoided by the other heirs. — *1 Hill. Real Prop. 593, 596; 9 Mass. 34; 12 Id. 349.* But the present case is a different one.

Our statute recognizes no distinction as to the number and connection of their owners between estates inherited and those acquired by purchase. — *2 Comp. L. 2627.*

All real property of the debtor, except expressly exempted, is subject to sale on execution. — *2 Comp. L. § 3119; 17 Mass. 81; 2 Conn. 244; 2 Har. & Johns. 42; 1 Id. 100.*

Separate parcels shall be exposed for sale, and the debtor may redeem such parcel, or his undivided interest therein. *2 Comp. L. §§ 3121, 3127, 3137; See also L. 1867, 97, 133.*

It does not follow necessarily that a fair division of the estate can not now be made in consequence of the sale, even if it be held that the heirs took the property subject to a division. The lots are as valuable as ever for the purpose of occupancy or sale. In partitioning the estate, these lots might be set off to Theodore Campau and an equal amount in value allotted to the other heirs. If partition can not otherwise be made, these lots may be sold and the proceeds divided. The other heirs must receive their fair share, but no more; but if they receive it in value they can not complain. Any division made must be based upon the value of each parcel.

We thus see that a levy upon, and sale of specific portions of a tract might operate so as to prejudice the cotenants by lessening the value of the entire tract; but a levy upon the entire parcel does not affect its value nor prevent the other heirs from receiving the same in value

that they otherwise would have received. The most that can be said is that this levy introduces another interest to be protected.

## CHRISTIANCY J.

The bill in this case was filed to remove a cloud from the complainant's title to an undivided ninth of lots 93 and 94 in section one, and lot 67 in section two, of Governor and Judges' plat of the city of Detroit. Complainant claims title to this one-ninth as the grantee of his brother, Theodore J. Campau, one of the heirs of Joseph Campau, deceased: complainant owning another ninth as such heir.

Joseph Campau, the ancestor, died intestate July 23, 1863, seized of this and a large amount of other real estate, situate mostly in Wayne county, but a large amount of it in many other counties in this State—the whole amounting in value to some two millions of dollars.

After the levy and sale presently to be noticed, but before the time of redemption had expired, all the heirs of Joseph Campau, except the children of James J. Campau, deceased (one of the heirs of Joseph), owning the one-ninth, joined in the attempt to make an amicable partition among themselves of all the real estate of their ancestor, Joseph Campau; wholly ignoring the children of said James J. and their interest; and for the purpose of effecting this partition, mutually executed and delivered deeds purporting to release and convey to each other in fee and in severalty, entire parcels of said estate and specific blocks and lots by number and description; thus purporting to divide up the whole estate in the same manner as if they had owned the whole, instead of the eight-ninths only.

The lots here in question were thus released and purported to be conveyed in fee and in severalty to the complainant, by the other heirs (including said Theodore), who owned the seven-ninths: the heirs of James J. owning the one-ninth, not joining or being recognized in any way.

Under this conveyance complainant claims to have acquired from said Theodore the one undivided ninth of these lots, which is all that is in controversy in this case.

Such is the title of complainant.

Defendants Driggs and Butler, claim title under levy and sale upon an execution against said Theodore, made to Godfrey, Dean and Brow, sometime prior to the partition deeds already mentioned, but the time of redemption upon which had not expired when such partition deeds were executed, though the sheriff's certificate of sale was on file in the office of the Register of Deeds. The sale on the execution was of the interest of said Theodore in the lots here in question and in two other lots subsequently conveyed by the partition deeds to other heirs. The interest of Theodore in each of these lots was sold separately for thirty-seven dollars and fifty cents, making in all one hundred and eighty - seven dollars and fifty cents.

After the expiration of the year allowed to the defendant in execution to redeem, Godfrey, Dean and Brow sold their interest in the purchase, and assigned the certificate of sale to John J. Speed, who subsequently sold and assigned the certificate to defendants, Driggs and Butler, to whom the sheriff (after the fifteen months allowed to creditors to redeem) executed a sheriff's deed in due form.

Complainant claims that this sale on the execution constitutes a cloud upon his title, and that it is void upon two grounds. But the main ground upon which he relies is that the execution sale was of the interest of Theodore in only a part of the real estate owned at the time in common by him and the other heirs; there being a large amount of other real estate thus held in common by the same parties, Theodore's interest in which, was not levied upon or sold; and that the only way in which any interest of Theodore's could be sold on execution, or in which Theodore himself could have sold, was to sell an undivided interest

in all the real estate thus held by the same tenancy; or at least, in all lying in the same county.

In support of this proposition complainant relies upon a considerable number of American authorities; no English decisions furnishing any direct support for the rule upon which the objection is based, and the little which is found in the English books tending, in some degree, to an opposite result; though the rule is supposed to result from common law reasons springing from the ownership of joint estates.

So far as the rule relied upon has been recognized, it is purely American, having originated in Massachusetts, in *Bartlet v. Harlow, 12 Mass. 348,* and *Varnum v. Abbot, Id. 474,* which have been followed, to a greater or less extent, in several of the states; some having extended, and others narrowed its application, and there being little uniformity in this respect.

In the great majority of the estates the question does not seem to have been decided; the cases being silent on the point. While Ohio seems to have expressly repudiated the whole doctrine in all its forms. . See *White v. Sayre, 2 Hammond, 110; Prentis' case, Ohio Cond. R. ( 6 and 7 Hammond ) 468; Treon's Lessee v. Emerick, 6 Ohio, 391.*

The question sought to be raised by this objection has never been decided in this court. And, as it is one of the first importance, the decision of which may seriously affect many titles, we propose to consider the general nature of the objection, with the reasons upon which it is based, as recognized by the authorities, without, in the first instance, expressing any decided opinion of our own until we see whether the question is properly involved in the case.

. When the question arises with reference only to a single tract or parcel owned jointly or in common, the authorities are numerous and uniform that one tenant cannot, without the assent of his co‑tenants, select a part of the tract by metes and bounds, and hold or sell it as his share in the

tract; thus making a partition by his own act which shall bind his co‑tenants—(see for examples, *Porter v. Hill, 9 Mass. 34; Holcomb v. Coryell, 11 N. J. 548; Staniford v. Fullerton, 18 Me. 229*).

The reasons for this are so obvious that they would probably be universally admitted. And for a similar reason, it seems to have been held by the courts of most of the states in which the question has arisen, that it is equally incompetent for such tenant, as against his co‑tenants, to convey an undivided interest in a specific portion only, by metes and bounds, of a tract so held jointly or in common; and that, so far as the rights of the other co‑tenants would, upon partition, be injured by giving effect to such deed, and compelling them to take their shares in several small portions, such deed would be treated as voidable at the option of such co‑tenants.

The rule for which complainant contends seems to have originated in this class of cases, when but a single parcel was in question. And such, with two exceptions, are all the cases upon which he relies. And in some of the states (Connecticut and Maryland at least) the rule has been expressly held not to extend beyond a single parcel. *Starr v. Leavitt, 2 Conn. 243; Runicker v. Smith, 2 Harand J. 421.* But the reasons upon which the rule was first applied to the case of a single parcel were afterward in two cases only, so far as I have been able to discover (*Peabody v. Minot, 24 Pick. 329; Thompson v. Barber, 12 N. H. 563*), held to extend still further, and to apply as well to a sale of the tenant's undivided interest in one of several entire tracts when there were other tracts held by the same tenancy in which no interest was conveyed. And it is not to be denied that there may be cases of this kind to which the reason applicable in the case of a single tract, would apply with some, though generally a less, degree of force. Thus, there may be cases in which, if effect were given to the conveyance as against the other tenants, each of the latter might

be compelled, on partition, to take his share in such minute portions of several different parcels, as greatly to reduce the value of his share; instead of receiving, as he otherwise might, larger portions, together, or certain whole tracts or lots.   On the other hand, the lands held by the same tenancy may be so situated, or the amount of them so great, that in many cases the interest of the co-tenants would not be prejudiced, on partition, by giving full effect to such conveyance.   And this might sometimes happen in the case of a single tract only, especially of a large one, or so situated as to admit of a perfectly fair partition into such parts as might be required to give effect to the deed.   And whenever, upon a fair partition, that part of the property in which an interest had been conveyed, should be set off to the party selling or to his grantee, the other co-tenants receiving their full share in as advantageous a form as if the conveyance had not been made, the whole ground of objection to the conveyance would seem to fail.   See *Varnum v. Abbot, 12 Mass. 474; McKee v. Barley, 11 Gratt. 340; Robinett v. Preston's heirs, 2 Rob. ( Vig.) 273; Johnson v. Stevens, 7 Cush. 431; Holcomb v. Coryell, 11 N. J. 548.*

The only ground upon which such a conveyance can be held inoperative, is the injury it might do to the co-tenants, in partition, in the manner already stated.   See *Varnum v. Abbot, supra.*

It has been sometimes suggested, and was urged upon the argument, that beyond the difficulties to be encountered in setting off the shares of the co-tenants so as to preserve their rights, there was a further objection to the validity of such deed, as it would create the necessity of several suits for partition, when one suit would otherwise have answered the purpose.   It is possible ( though I express no opinion upon the point) that the purchaser under such deed might not be allowed to sustain a bill for partition against the co-tenant.   But if any of the co-tenants bring the bill, it may at least be doubted whether there is any difficulty in making

the purchaser a defendant, ( *Whitton v. Whitton, 38 N. H. 127; Story's Eq. Jur.* § *656 a, 656 b, 656 c, and cases cited* ), or whether the necessity of so doing ( if it be necessary ) can be recognized as a sufficient ground for holding the deed void, before it is, in fact, ascertained that a fair partition could not be made, giving effect to the deed. And if the co-tenants, in bringing a bill for partition, may ignore such conveyance, and make only the original tenant who has thus sold, a party; still, if the share of the tenant selling should happen to be so set off as to include that in which an interest had been sold, such partition would, according to most of the authorities in which the point has been discussed, enure to the benefit of his vendee by estoppel; since the deed would be good as to him and all claiming under him, if not as to all parties other than the co-tenants who might be injured by it. ( And a sale on execution is held to stand on the same ground as a deed from the defendant in execution. ) *Bartlet v. Harlow, 12 Mass. 348; Varnum v. Abbot, Id. 474; Porter v. Hill, 9 Id. 34; Baldwin v. Whiting, 13 Mass. 57; Cutting v. Rockwood. 2 Pick. 443; Nichols v. Smith, 22 Pick. 316; Cogswell v. Reed, 12 Me. 198; Cox v. McMullan, 14 Grat. 82; McKee v. Barley, 11 Id. 340; Holcomb v. Coryell, 3 Stock. N. J. 548; Great Falls Co. v. Worster, 15 N. H. 449; Whitton v. Whitton, 38 Id. 127; Smith v. Benson, 9 Vt. 138; Johnson v. Stevens, 7 Cush. 431; Challefoux et. al. v. Ducharme, 4 Wis. 554.*

But the necessity of making the purchaser a party, or even of having two suits or two partitions in the same suit, instead of one, if the shares can still be fairly set off to the co-tenants, might seem to be a consideration going only to the costs of the proceeding, rather than an objection upon which alone the deed could be held void. The only ground upon which courts would seem to be justified in treating the deed as void, as against the co-tenants, is the impracticability of setting off their shares, in as advantageous a form as if the deed had not been made; and this, as already suggested,

would seem to depend upon the amount and condition of
the property, and the special circumstances of each particu-
lar case.

In a direct proceeding for partition, the condition and
amount of the property and all the circumstances bearing
upon the practicability of making a fair partition, can be
(and are by the usual practice) inquired into and ascer-
tained; so that the court can, in such cases, see and deter-
mine whether effect can be given to the deed and a fair
partition still be made. And though in such partition the
purchaser of an interest in a part were not a party, yet by
the ordinary and correct practice of the court there would
be a reference to ascertain and report the state of the title;
and the interest of such purchaser ought, therefore, to
appear. And whenever this does appear, unless something
should appear to show that the conveyance was not fair or
for a valuable consideration, it is not perhaps easy to see
why the court upon principles of equity, should not seek
to protect the interest of such purchaser, so far as this
could be done without injury to the co-tenants; and if the
share of such purchaser could not be set off to him, that
it should, at least, be set off to the original co tenant who
made the conveyance, as a part of his share, if found prac-
ticable without injury to the others, so as to give the pur-
chaser an opportunity to enforce his rights, as against his
vendor, by a partition of that portion of the property. See
authorities above cited, especially *Robinett v. Preston's heirs,
2 Robinson, 273; McKee v. Barley, 11 Gratt. 340; Holcomb
v. Coryell, 11 N. J. 548.* This duty might seem to result
from the doctrine of most of the cases, that the deed is
only to be treated as void so far as it injuriously affects the
cotenants, and that it is good against the grantor and those
claiming under him. But see *McKey v. Welch, 22 Texas,
390.* When the question of the validity of the deed arises
collaterally as it does here, cases may certainly occur in
which, owing to the peculiar circumstances and the nature

and number of such conveyances, enough may appear to the court to enable them to see, beyond all question, that such conveyance, if held effectual, must necessarily prove injurious to the co‑tenants.    And whenever this does so appear, the reason for holding the conveyance void, to this extent, as against the co‑tenants, is sufficiently intelligible.

But where the question arises collaterally, as in this case, and enough does not appear to enable the court to see that giving effect to the deed must necessarily prejudice the co‑tenants, in setting off their shares, the principle upon which courts can *a priori* and without ascertaining the condition of the whole property, and all the material circumstances, hold such conveyance void, is certainly not very clear And, in view of the reason upon which alone the rule purports to rest—the injury which may be done to the co‑tenants, which they may waive—the principle on which the conveyance can be held void, so as not to pass the title of the grantor, as to all except the co‑tenant, would seem to be involved in some obscurity.    In Virginia it has been expressly held that such conveyance by one tenant in common of his interest in a part of an entire tract held in common, passes the title of the grantor in such part, not only as against himself and those claiming under him, but as to all other persons except the co‑tenants injured by it; and, as to them also, except so far as they would be injured. And this is said to be the fair result of the Massachusetts doctrine and that of other authorities which hold the deed voidable on account of the injury to the co‑tenants, and not absolutely void.    *Robinett v. Preston, 2 Robinson (Virginia), 273; McKee v. Barley, 11 Grat. 340; and see Holcomb v. Coryell, 11 N. J. (3 Stockt.) 548.*

No distinction seems to be made in the authorities between a sale by the tenant himself and a sale on execution against him.    But where, as in some of the New England States, no sale is made upon the execution, but the land is set off and possession delivered to the creditor, it is possible

that this necessity of delivering possession may furnish a better ground for holding the proceeding void, in such a case, than may be found to exist in the case of a' sale. Again, the rule which is to render void the conveyance by one tenant in common of an undivided interest in the whole of one, or several parcels, where there are other parcels held by all the same tenants in common, must, in its application, be limited *somewhere;* since, if applied to cases where large amounts of property are held in common even in the same county, to say nothing of different counties and different States, the remedy to be secured by holding the conveyance void might sometimes be worse than the evil to be remedied; as it might tend materially to check the power of sale, and drive the owners to the expense of a partition when, otherwise, it would be unnecessary.

It was suggested by complainant's counsel, that the rule would be restricted to cases where all the tenants held under the *same title.* But the *reason* of this rule in the case of a tenancy in common, has no connection with the *mode* in which the *title* was acquired. It grows simply out of the common ownership, without reference to the mode of its acquisition. And all the property thus held in the same jurisdiction might be partitioned in the same suit, however numerous or diverse the titles by which it was acquired. No unity of title was ever necessary in the case of tenancy in common, and at common law seldom existed. Any limitation of the rule upon this basis, though it might sometimes be convenient, would be merely arbitrary. *Peabody v. Minot, 24 Pick. 329,* limits the application of the rule to all the common property in the same county; because the jurisdiction, upon partition, was co-extensive with the county; while in *Thompson v. Barber, 12 N. H. 563,* it was held to extend to all within the State.

In view of all the difficulties in fixing, upon principle, any just and practicable limitation in the application of the rule, it may admit of some doubt, whether the rule should

be extended beyond a single parcel. Upon this point the authorities may be regarded as yet equally balanced: Connecticut and Maryland being one way, and Massachusetts and New Hampshire the other.

But whatever may be the force of the rule or the extent of its application, if it applies to the execution-sale, and defeats the title of Driggs and Butler, it must apply with at least equal force, and much more clearly, to defeat the title of the complainant.

The deed from Theodore J. Campau to the complainant conveyed, not one-ninth of all the property held in common by the same tenancy, nor even of the whole so held in the county of Wayne, but one-ninth of these lots and the other lands attempted to be conveyed to him in severalty as his share. And such was the case of every conveyance executed by each of the heirs who executed deeds to each of the others. Complainant's counsel insist that the objection to such conveyance by one tenant in common only applies when made to a stranger; and where, for instance, there are but two tenants in common, one of whom conveys to the other, this is doubtless true; as the other tenant, by taking the conveyance, waives the objection. But when there are several other tenants in common (of the same and other lands) besides the grantor and the grantee, the injury to them would be precisely the same as if the conveyance had been made to a stranger, and the same difficulties would be encountered in setting off their shares upon partition.

It is true, that if all the heirs or tenants in common, including the children of James J., had joined in making such partition and conveyances, as each would have received his share, there being none of the co-tenants who could thereby be injured, the deeds must have been effectual as to all, so far as this point is concerned.

But these conveyances of all the other heirs except the children of James J. dividing up the whole estate among

18 MICH.—D.

themselves, entirely ignoring the interest or share of these children, are far more objectionable than the conveyance by a single tenant in common of an interest in any number of parcels less than the whole, held by the same tenancy. These conveyances must, as to the heirs of James J., be held void to the extent of one-ninth, or they could receive nothing, either in common or in severalty. And to give any effect to all these conveyances, the heirs of James J. in obtaining partition, must, even if they took their shares collectively, take a portion equal to one-ninth by metes and bounds in every separate tract, lot or parcel of the entire estate of Joseph Campau, unless, owing to the great amount of the lands of the estate, it should be found practicable to take in a satisfactory form in larger parcels an equal amount in value from each of the heirs conveying. And in that event the deeds of the heirs to each other, must be treated as void to that extent.

This result the court can not fail to see, without any inquiry into facts beyond those appearing in the records, must be much more likely to prove injurious to them, than the execution-sale to any of the parties, and more likely to diminish the value of their shares.

And, in making a partition to which the heirs of James J. are entitled, some of these deeds must be held invalid to some extent, and this would naturally lead to the necessity of treating them all as void, even as between themselves, unless the obstacle should be capable of being removed by the great extent of the estate, as above suggested.

Upon such partition there can be no certainty that the particular lots now claimed by the complainant, would fall to his share.

In fact, if a suit for partition should be had in which the purchaser under the execution-sale should be ignored, these lots, for aught we can discover, would be as likely to be set off to Theodore, as to the complainant; and he might then be estopped as to the purchasers under the execution,

in a partition sought by them, according to the principle of some of the authorities above cited.

But we need not determine whether these deeds were void, nor whether complainant claiming under Theodore is estopped to deny the validity of the execution - sale, since, if the sale on the execution was void, because confined to Theodore's interest in separate parcels ( less than the whole number ) of the property held by him and the other heirs in common, as contended by complainant's counsel, for the same reason and under the same rule, the conveyance by Theodore to the complainant was also void; and the complainant has failed to show title.

If the conveyance of Theodore to complainant was not void for this reason, then the sale on the execution was valid, so far as this objection is concerned; and the defendants, Driggs and Butler, have shown title; and the complainant must fail on this ground, unless the execution - sale is void on some other ground, or the complainant shows some other ground for relief.

The only other ground upon which the sale on execution is claimed to be void, is that the levy was excessive. The fair value of the interest sold in the five lots (of which complainant claims three), had the estate of Joseph Campau been settled and the title perfect, would have been from eight to ten thousand dollars.

But to three of the most valuable lots the deceased appeared to have no record title, having held them by possession only; and the estate was unsettled at the time, and involved in a great amount of litigation between the different heirs, and between them and the administrators, with no reasonable prospect of an early settlement of the estate; so that it would have been difficult to fix any definite value upon the interest so sold.

The sale being at public auction, open and fair, and no fraud being shown or pretended, we do not think it can be set aside or treated as invalid in this proceeding, on the

ground of an excessive levy, or because it sold for much less than its value; especially, as the sale was subject to a year's redemption.

As an excessive levy merely, it is clear the remedy would have been by motion to the court from which the execution issued, and before sale, to set it aside. Every court controls its own process. No such motion having been made, and the whole year's redemption having expired and the deed been given before any relief is sought, the objection is one purely of inadequacy of price for which the sale was made. The remedy for this also, if any, was by motion (See *Cavenaugh v. Jakeway Walk. Ch. 344*), which should have been promptly made. See *Noyes v. True, 23 Ill. 503*, which was a bill to set aside a sale for inadequacy, and it was held that, having neglected for the whole year (given for redemption) to make a motion on this ground in the court issuing the execution, and no excuse being shown for the delay, there being no fraud shown, complainant was not entitled to relief in equity.

In *Reed v. Brooks, 3 Littell, 127*, mere inadequacy of price, however great, was held not sufficient for setting aside a judicial sale on motion. And no case has been cited, nor are we aware of any, in which an execution sale of real estate has been set aside, on motion or otherwise, for inadequacy of price alone, especially when, as in this case, it was subject to a year's redemption. The statute giving a year's redemption seems to rest mainly upon the idea that real estate may be sold for less than its value; and to give the time of redemption mainly on this ground. This is an adequate remedy; and if the debtor will not avail himself of it, he can not complain of it. Public policy requires that judicial sales which have been open and fair, and nothing done to prevent a sale at a higher price, should not be disturbed on the ground of inadequacy; since the effect of an opposite course would be to deter bidders, and render the prices on such sales still less. And any rule which might

be laid down as to the degree of inadequacy would be wholly arbitrary.—*Hammond v. Scott, 12 Mo. 11; Meirs v. Zell, 7 Id. 331.*

But that such sales cannot be set aside on this ground alone, at least in a collateral proceeding, see *Hart v. Bleight, 3 B. Monroe, 273; Bank v. Hassert, 1 Saxt. ( N. J.) 1; Exrs. of Simmons v. Vandegrift, Id. 55; Roe v. Ross, 2 Ind. 99; Benton v. Shreeve, 4 Ind. 66; Newman v. Meek, 1 Freeman's Ch. 458; Mercereau v. Prest, 2 Green's Ch. 460; Outcalt v. Disborough, 2 Id. 218; Carson's Sale, 6 Watts, Penn. 140; Cooper v. Galbraith, 3 Wash. C. C. Rep. 546.*

But lastly, the complainant insists that, if the execution-sale is valid, he ought still to be permitted to redeem. This claim is sought to be sustained on the ground of certain conversations or attempted negotiations between Theodore and Mr. Cheever, who had been the attorney of the execution-creditors in obtaining the judgment and making the sale. But aside from the facts that the sale was made to Godfrey, Dean & Brow, whose certificate was on file and notice to all parties, and that Cheever had no authority to make any arrangement which should affect the sale, we do not consider it as quite certain that any of the conversations in relation to the subject took place until after the year's redemption had expired. However this may be, the subject of those conversations seems to have been confined to an attempt on the part of Theodore to get a deduction from the amount of the judgment, without any reference to the question of extending the time of redemption; and even upon this point no agreement was ever arrived at.

It is clear from the evidence, that all the most important of even these conversations ( if any of them could be of any importance ), were had after the year allowed to Theodore to redeem had expired, and just prior to the expiration of the fifteen months allowed to creditors for redemption: Theodore evidently supposing that he had fifteen

months to redeem, instead of a year; and, finding he could get no deduction, then undertook to redeem.

Complainant himself was aware of this sale before the time of redemption expired, and relied upon Theodore to redeem. He stands in no better position than Theodore himself. The claim to redeem, therefore, rests upon the culpable negligence of Theodore and the complainant, or their ignorance of the law, neither of which will authorize the court to grant the redemption, without going far beyond the recognized grounds of equity jurisdiction.

The two points last considered present the only questions necessarily involved in this case; because, as already shown, if the sale under the execution was void, as confined to an interest in certain parcels less than the whole, then, upon the like ground, the conveyance from Theodore was invalid; and complainant has shown no title. If, on the other hand, the sale on the execution was not invalid on the ground supposed, the defendants, Driggs and Butler, have shown a good title, and in either event the complainant has equally failed to sustain his bill.

The decree of the court below must therefore be reversed, and the bill dismissed; and defendants must recover their costs in both courts.

COOLEY CH. J., concurred.

GRAVES, J.

I agree with my brother Christiancy in holding, and upon the grounds stated by him, that if the levy and sale on execution were invalid by reason of being limited to Theodore Campau's undivided interest in a part of the several parcels owned by him in common with the other heirs; that then, by the same principle, the conveyance by Theodore to complainant was likewise invalid, wherefore the latter acquired no title, and has consequently failed to show one in support of his bill: and on the contrary, if such

conveyance to the complainant was not rendered invalid by such circumstance, then the levy and sale on execution could not be defeated on that ground. I also agree with him in holding that the bill cannot be supported on the idea that the levy was excessive; nor upon the ground that Theodore was mistaken or misled as to the time given for redemption; nor upon the notion that an arrangement was made for a longer time than that prescribed by statute, and accordingly I concur in the result. As this view is sufficient to dispose of the case, I am not at present inclined to go beyond it.

CAMPBELL J.

I concur in dismissing the bill upon two grounds. I do not think, if the levy was good, that the facts set forth furnish any sufficient reason for avoiding the sale either as excessive or as left unredeemed through mistake or misrepresentation. There is no sufficient reason shown for the failure to redeem, which would create an equity against the purchasers.

I also think that Campau's rights in the particular lots in dispute depend upon analogous principles to those which he sets up against defendants. The same reasons which he claims as invalidating their title, would prevail to disprove any such title in him as must exist in order to maintain this bill. If correct in his claims against defendants, there is no certainty that he will ever own the lots in question, which may fall to some one else on the partition; and if this be so, he cannot claim any peculiar right to have the alleged cloud removed. He and the defendants, upon his theory, occupy similar positions, and he can, upon this ground, have no superior equities.

I therefore am not disposed to enter upon any inquiry into the legal or equitable rules regulating the dealings of tenants in common. As no impressions given under such

circumstances would have any force as authority, I prefer to reserve any expression upon the subject until it is required by some actual necessity, when it can be given under the light of existing facts. I now concur in the judgment for the reasons given, because the complainant has not put himself in any position to assail the defendants, or to invoke any principle which will aid him more than it will them.