Soutter *v.* Porter.

James T. Soutter & al. *versus* Emerson D. Porter.

The conveyance by a tenant in common of a portion of the common estate by metes and bounds, will not necessarily be inoperative upon his own rights or the rights of others. The law will give effect to such conveyance, so far as it may do so consistently with the preservation of the entire rights of the co-tenant, and no further. If the estate so conveyed by metes and bounds, or any part of it, shall, upon partition of the premises, be assigned to the right of the grantor or his assignee, the conveyance embracing it may operate, and convey the title from the grantor to the grantee.

Such a conveyance of a tenant in common, however, cannot in any event operate, contrary to the expressed declarations and intentions of the parties, to convey an estate in common instead of an estate in severalty.

Where one tenant in common conveys a portion only of the common property by metes and bounds, a creditor of the grantee, who levies his execution upon an undivided share of the whole common estate, acquires nothing by such levy.

THIS was a petition for partition. At the trial before SHEPLEY J. the petitioners read a deed of release to themselves from Stephen Goodhue, dated Aug. 29, 1844, acknowledged same day, and recorded Aug. 29, 1844, conveying all interest in the premises.

Respondent read a deed, dated April 1, 1833, recorded 2d same April, Micajah Drinkwater to John McLaflin, conveying one half of the premises in common; deed of mortgage of same date, of same premises from the grantor to grantee, reconveying same in mortgage, recorded April 10th, 1833. An assignment of that mortgage from Drinkwater to the respondent, made Oct. 4, 1839, recorded same day; record of a judgment recovered by Drinkwater for possession of the premises, declaring on the mortgage and an entry by virtue of an execution issued thereon, made Jan. 19, 1837, to foreclose the mortgage; deed dated April 3, 1833, duly recorded 11th of same month, from John McLaflin to Stephen Goodhue, releasing the south half; deed of same date from Goodhue to McLaflin, releasing the north half; deed May 3, 1834, duly recorded 5th of same month, Stephen Goodhue to Albert Baker, conveying the south half with warranty.

Petitioners then read the record of a judgment recovered by them at the July term of this Court, 1844, against Albert Baker; and of a levy, duly made and recorded, on the south half of the premises by metes and bounds. Respondent then read, subject to objection, the record of a judgment recovered by Joseph Stover against Albert Baker, July term, 1844, and of a levy on eight twenty-sixth parts of house and lot in controversy, the same having been attached on mesne process by said Stover subsequently to an attachment of the same by the petitioners.

All the documents may be referred to and copies put into the case at the election of either party. The case was taken

by consent from the jury and submitted to the decision of the Court from the testimony, or so much thereof as may be legal; and judgment was to be entered according to the legal rights of the parties.

No one of the papers referred to came into the hands of the Reporter. The facts, however, are stated in the opinion of the Court. When the opinion was read, July 1, 1848, it was suggested, that there was error in one statement, the papers were re-examined, and it was found that there was no error in the statement.

This case was argued in writing.

*Hobbs,* for the petitioners.

The respondent does not claim to be sole seized. By his plea he denies the tenancy in common or seizin of the petitioners, as alleged in their petition.

To what are petitioners entitled?

The answer to this question will depend in part on the legal effect of the conveyances of McLaflin to Goodhue and Goodhue to Baker, under whom petitioners claim.

If Baker's title to the south half is void, the petitioner's title, so far as it depends on the levy against Baker, must fall with it.

But if Baker's title is void against the petitioners it is also void against Stover, a subsequent attaching creditor.

If void against both, then petitioners' title is established by deed from Goodhue to them, dated Aug. 29, 1844. That deed conveyed all Goodhue's interest in the whole parcel.

It is conceded that the partition deeds between Goodhue and McLaflin are voidable by respondent, and by his dissent become inoperative and void as to him. But the respondent, by introducing them to displace the petitioners' title to an undivided half of the whole would seem to give his assent to the partition made by his mortgagor; and if adopted by him, said partition deeds establish the title of Baker to the south half, and consequently confirm the petitioners' levy on the south half, as the property of Baker.

But if such use of said partition deeds by the respondent is

not to have that effect, then the petitioners contend, that the deed from Goodhue to Baker is not wholly void.   It conveyed all Goodhue's interest in the south half, to wit, an undivided half of it, or one quarter of the whole.

"In such case there is no reason of justice or policy which should prevent the grantee from holding an undivided moiety of the whole." *Varnum* v. *Abbot*, 12 Mass. R. 478.

It is no injury to the respondent to give the deed this construction.   He will still retain his share as before.

If the deed, Goodhue to Baker, conveyed to him half undivided of the south half, the petitioners acquired the same title by their levy, for a levy is a statute conveyance, and does not differ in its legal effect from a conveyance by deed.   *Varnum* v. *Abbot*, 12 Mass. R. 476; *Waterhouse* v. *Gibson*, 4 Greenl. 230.

The levy of petitioners took Baker's interest in the south half.   It is an estoppel on Baker, and consequently on Stover. *Varnum* v. *Abbot*, 12 Mass. R. 474; *Bartlett* v. *Harlow*, *ib.* 354.

That levy was not entirely fruitless and void.   If on partition the respondent's half should be so assigned as not to include any part of that taken in execution by petitioners, there is no reason why they may not hold what has thus been taken on this execution.   12 Mass. R. 354.   A levy under similar circumstances was held valid in *Brown* v. *Bailey*, 1 Metc. 254.

If Stover cannot set up title against petitioners, much less can respondent.   If he presents it in bar of petitioners' claim, it must be considered as an affirmation of partition by his mortgagor and Goodhue.   The respondent owns only one half of the property, — the north half, if he affirms the partition by his mortgagor; an undivided half, if that is to be considered as void in regard to himself.

If respondent owns half, divided or undivided, petitioners own the other half, by the levy, as ʾbefore shewn, or, by deed of Aug. 29, 1844.   Stover has no interest in the premises.

If it is contended that the deed of Goodhue to Baker is

wholly void, then we say the title still remained in Goodhue of an undivided half of the whole and his deed of Aug. 22, 1844, conveyed that estate to the petitioners. And so the petition is maintained.

*Rowe,* for the respondent.

It is not denied, that the respondent is seized of an undivided half of the premises. The only question is, whether the petitioners are seized of any, and if any, what portion.

I deny that they are seized of any part. They first claim under Goodhue's release of Aug. 1844. They take nothing by that, for Goodhue had, then, no title.

On April 3, 1834, Goodhue and McLaflin were in joint possession of the premises, Goodhue having an unincumbered title to one undivided half, and McLaflin holding the other, subject to a mortgage to Drinkwater. On that day they executed mutual releases, whereby Goodhue held the south, and McLaflin the north half, in severalty.

On May 3, 1834, Goodhue, continuing in uninterrupted possession of that part, conveyed the south half, by deed of warranty, to Baker. Goodhue no longer had any interest in the premises, his title to the north half having passed to McLaflin, and his title to the south, to Baker. For whatever doubt may arise as to the effect of his deeds to McLaflin and Baker in other respects, there can be none as to their operating as estoppels to him and those who claim under him, by subsequent conveyances. *Varnum* v. *Abbot,* 12 Mass. R. 474.

The counsel throws out the idea that the introduction by us of the partition deeds of Goodhue and McLaflin, is a ratification of that partition, and confirms his client's title in severalty to the south half. Well, so far as this case is concerned, I can make no objection to the adoption of that doctrine. For the only effect will be a nonsuit; there being nothing to be divided — the petitioners holding nothing in common with the respondent.

The petitioners' second ground of claim is by virtue of the

levy of their execution against Baker, in the south half, by metes and bounds.

I deny that this gives them any right whatever to pray for partition.

If it be conceded that the levy passed all Baker's interest in the south half, the concession would not aid the petitioners' case. Before they can have partition they must show an undivided interest in the whole premises. Baker had no such interest, but only an undivided moiety of the south half, which is a very different matter from an undivided quarter of the whole. He could have maintained no suit for partition of the whole, for he had no interest in the north half; nor for partition of the south half, for that would work an injury to this respondent, which the law does not allow. The land, I understand, is covered by a block of houses containing two tenements, the one on the north and the other on the south half. The only just and convenient partition must be by a line drawn east and west between those tenements. The respondent would then hold one of the tenements in severalty. If this partition be granted, he will have assigned to him one half of the southern tenement; and in a similar partition, on a petition by McLaflin, who seems to have Goodhue's interest in the other half, he would have half of the northern tenement; half of each, instead of the whole of one. That proceedings, leading to such results, cannot be allowed, has been long settled on reason and by authority. *Porter* v. *Hill*, 9 Mass. R. 34; *Bartlett* v. *Harlow*, 12 Mass. R. 352; *Varnum* v. *Abbot*, 12 Mass. R. 476. It appears to me that the cases cited are conclusive against the maintenance of this suit.

But though satisfied with the result, I am not satisfied with the consequences that flow from the reasons that lead to it. McLaflin holds one half of the north tenement without having paid any consideration. Baker but half of the southern, when he has paid full consideration for the whole of that, or for half of both, and neither can have partition without the consent of the respondent; and such partition, if made, would give respondent one of the tenements in severalty, and thus destroy

the title of one of Goodhue's grantees. And there is but one way, in this view of the case, of avoiding this. That is, for one person to unite in himself, the McLaflin and the Baker titles, and then owning an undivided half of each tenement, he would be regarded as the owner of an undivided half of both, presenting the case supposed by Judge Jackson in the counsel's extract from the opinion in *Varnum* v. *Abbot,* 12 Mass. R. 478.

I prefer to arrive at the same result, — a nonsuit, by a course of reasoning that does not involve such consequences. And this I think may be effected, by aid of the common law doctrine of exchange.

" And, upon a similar principle, in case, after a partition or exchange of lands of inheritance, either party or his heirs be evicted of his share, the other and his heirs are bound to warranty, because they enjoy the equivalent." 2 Black. 300. " An exchange is a mutual grant of equal interest, the one in consideration of the other. If after an exchange of lands, or other hereditaments, either party be evicted of those which were taken by him in exchange, through defect of the other's title, he shall return back to the possession of his own, by virtue of the implied warranty contained in all exchanges." 2 Black. 323.

The mutual releases of McLaflin and Goodhue, were in effect, though not technically, an exchange. The transaction is substantially the same, as if it had been effected by an indenture executed by both parties, and containing the word " exchange;" and is to be governed by the same principles of law. Goodhue gave his interest in the northern tenement, in exchange for McLaflin's interest in the southern, which was equal. Consequently, when he, or his grantee was evicted of that interest, through defect of McLaflin's title, he, or his grantee, returned back to the possession of his former interest in the northern half. This eviction was by the entry of Drinkwater to foreclose his mortgage in Jan. 1837. Prior to that time, in May, 1834, Goodhue had conveyed to Baker, by deed of warranty. Baker occupied Goodhue's position in reference

to the exchange. He held the land released by McLaflin, and lost it by the foreclosure, through defect of McLaflin's title. McLaflin released to Goodhue, his heirs and assigns, to hold to him, his heirs and assigns against the claims of all persons claiming under McLaflin. Baker, as Goodhue's assignee, was the person evicted. His is the claim for indemnity, on the authority quoted, and it is to him the interest in the northern half should revert. Or, if Goodhue's interest in the northern half should, on the principle of exchange, revert to him, as it would revert to him, not as a personal right, but as appendant to the ownership of the southern half, and as he had conveyed to Baker by warranty, the title would enure to the benefit of Baker, who would thus be in possession of an undivided half of the whole. Such a result would be just to all parties, and carry out their obvious intentions. And, as it is the settled rule of law, so to construe deeds as to give effect to the intent of parties, and any other construction must, in this case, thwart that intent, and work injustice, I submit this view to the consideration of the Court.

How would the parties stand in this view of the case?

Baker was in possession of, and owned an undivided half of the whole, at time of petitioners' levy. They levied on the southern half by metes and bounds. They have no interest in the northern, and, as before shown, therefore cannot have partition. Besides, Stover has since levied on eight twenty-sixths of the whole, and he may maintain a suit to have that share set off to him, for, in this view of the case, Baker, at the time of Stover's levy was, undoubtedly, seized of at least one fourth of the whole, the petitioners having taken only his interest in the south half.

Such a result would not work a great injury to petitioners for they may still levy on the remaining eighteen twenty-sixths.

It will be obvious to the Court, that the latter view is not presented, so much with reference to the question between the parties in this case, for it cannot affect the decision of that, as with reference to questions which will arise between different attaching creditors of Baker. It seems to me desirable to

have the decision put upon such grounds, as will leave no room for future controversy.

*Hobbs,* for petitioners, in reply.

Does the respondent disown the partition of McLaflin and Goodhue? If so, that partition is void, so far as respondent is concerned.

Does he assent to that partition? He cannot hold the partition both void and valid.

The partition deeds of McLaflin and Goodhue are void or valid, as the respondent may choose to consider them. If void, then nothing passed by them. The title to one half undivided remained in Goodhue till his conveyance to the petitioners. If valid, then the petitioners are owners of the southern half, by metes and bounds, and are perfectly willing to become nonsuit if the respondent chooses to confirm the partition.

The respondent cannot invoke an estoppel against the petitioners, arising from the deeds of Goodhue. The respondent is not a party or privy to them, nor in any manner bound by them, but is a stranger to the partition and deed to Baker.

The doctrine has been long established that one who is not bound by an estoppel cannot take advantage of it; that a stranger shall not be bound by, or take advantage of, an estoppel. Co. Lit. 352, (a); *Lansing* v. *Montgomery,* 3 Johns. R. 382; *Braintree* v. *Hingham,* 17 Mass. R. 432; *Worcester* v. *Green,* 2 Pick. 425.

McLaflin has had no interest in the premises since the foreclosure of Drinkwater became absolute, because, as argued before, the partition is void or valid at the election of the respondent. If he does not assent to the partition as made, it is void and nothing passed by the deeds.

It is absurd for the respondent to say that void partition deeds had still the effect to convey to one of the parties, (and that party, the one who had no power to make partition,) one undivided fourth more than he originally had.

If, as the counsel for respondent suggests, it is the settled rule of law so to construe deeds as to give effect to the intent of parties, I think the Court will be slow to give such an

effect to the deeds of partition as he claims for them. If the Court cannot consider the partition valid they will, if possible, place the parties in their original position. This is not effected by the application of the doctrine of exchange.

The deeds of McLaflin and Goodhue effected a partition in common law, between tenants in common, in which there is no implied warranty, and such a partition has never been held an exchange. And again, the deeds do not contain the word "exchange," which is absolutely necessary to that mode of conveyance. Co. Lit. 50, (a); Shep. Touch. 295; 2 Black. Com. 323; *Cass* v. *Thompson,* 1 N. H. Rep. 65.

If the transaction was not a technical exchange, then there was no implied warranty, nor reversion of the original estate upon the eviction by Drinkwater.

But grant that the deeds were a technical exchange, then the fee in one half, undivided of the northern half, reverted to Goodhue, and remained in him till his conveyance to the petitioners.

The counsel for the respondent contends, that the reversion enured to the benefit of Baker, because the fee in the reverted estate was appendant to the ownership of the southern half, and this had been conveyed by deed of warranty to him.

One fee simple is never appendant to another, and the only way the reversion could enure to the benefit of Baker, would be by the estoppel of Goodhue by his deed, to claim an interest in the northern half. But his deed was of the southern half only, by metes and bounds.

Neither would such a result as the counsel wishes to establish, be just to the parties, for Baker has a remedy upon the covenants in his deed, and the reversion to him would not bar an action on those covenants. Stover has no undivided interest in the whole estate, for by their levy upon the southern half, the petitioners acquired all Baker's title in that part, and Baker and his subsequent grantee, Stover, are estopped by that levy to claim any interest in the southern half. *Varnum* v. *Abbot,* 12 Mass. R. 476. Stover's levy upon eight twenty-

sixths of the whole, was then void, for the reason that Baker had then no interest in the whole, or in any part. If Baker had still an interest in the northern half, resulting from the application of the doctrine of *exchange,* which 1 deny ; and if it is conceded that Stover by his levy acquired that interest, which I also deny, still the respondent cannot be injured by him, for he has an interest only in the northern half, and therefore, as the counsel argues, cannot have partition.

The counsel for the respondent contends, that the petitioners cannot maintain this suit on the ground of their levy, for by that they acquired Baker's interest in the south half only. But he also contends that the reversion of the undivided half of the north half was appendant to the ownership of the south half. If it was so appendant, it passed by the levy to the petitioners. For the levy had all the effect of a deed from Baker. If Goodhue is estopped by his deed to Baker to claim an interest in the north half; Baker, and all claiming under him, are estopped by the extent. This excludes Stover's title to any part of the premises. The counsel assumes what is not the fact, that Baker at the time of the levy was in possession of one *undivided* half. But I apprehend that the Court, in the decision of this cause will adjudicate only upon the rights of the parties before them.

The respondent has a clear title to one undivided half of the premises, and if he were the petitioner, who could deny his right to partition, or disturb him in the occupation of the share that might be set off to him ? He cannot be evicted of any part that may be assigned him on this petition. He ought not to be allowed to set up against the petitioners titles in other parties which they themselves cannot set up; or claim an estoppel against petitioners, arising from deeds to which he is an entire stranger. His attempts to uphold these titles can only embarrass his own.

The opinion of the Court was drawn up by

SHEPLEY J. — The petitioners claim to be the owners as tenants in common of a moiety of a lot of land in the city of

Bangor, upon which two dwellinghouses adjoining each other have been erected, and to have their share set off for their separate enjoyment.

The respondent denies their seizin as tenants in common. The question presented is, whether they have, by the testimony introduced, established any title as tenants in common.

The respondent shows, that he is the owner of an undivided moiety of the premises in fee, having derived his title from a deed of conveyance in mortgage, made on April 1, 1833, by John McLaflin, to Micajah Drinkwater, who made an entry to foreclose the mortgage, on January 19, 1837, by virtue of a judgment recovered at law, and assigned the mortgage to the respondent on October 4, 1839. Stephen Goodhue, the owner of the other moiety, and John McLaflin, the mortgager, attempted to make a partition of the premises by deeds of release, mutually executed and delivered, by which McLaflin released to Goodhue his interest in the southerly half, and Goodhue released to McLaflin his interest in the northerly half of the premises on April 3, 1833. On May 3, 1834, Goodhue conveyed' by metes and bounds the southerly half to Albert Baker, with covenants of warranty. The petitioners, having recovered judgment against Baker in July, 1844, by virtue of an execution issued thereon, caused a levy to be duly made and recorded upon the southerly half of the premises, by metes and bounds. By this levy and by the statute then in force, they obtained as good a title to the southerly half as their debtor, Baker, had therein.

Whatever effect the deeds of release made between Goodhue and McLaflin may have, as it respects the rights of others, they can have no effect upon the rights of the respondent. With respect to him the conveyance made by Goodhue to Baker, is but the conveyance of a tenant in common attempting to convey by metes and bounds, a portion of the common estate. Such a conveyance cannot impair or vary the rights of a co-tenant. The grantor, however, had some title to the premises conveyed; and his conveyance would not necessarily be inoperative upon his own rights or the rights of others.

The law will give effect to that conveyance so far, as it may do so consistently with a preservation of the entire rights of the co-tenant and no further. It may prove to be effectual to convey the title of the grantor to his grantee or it may not. That must depend upon a fact to be yet ascertained, whether the estate so conveyed by metes and bounds, shall upon partition of the premises be assigned to the right of the grantor or his assignee. Upon so much of the estate, as may be hereafter thus assigned, that conveyance embracing it, may operate and convey the title of the grantor to the grantee. If no part should be thus assigned, it will prove to be wholly inoperative. Such a conveyance of a tenant in common, cannot in any event operate contrary to the expressed declarations and intentions of the parties, to convey an estate in common instead of an estate in severalty. While the law for the purpose of making a deed operative will give it such a construction, that it may, if possible, convey by any legal mode of conveyance the estate intended to be conveyed, it will not permit such a construction, as would convey an estate of a different kind or description from that intended to be conveyed.

Neither the petitioners nor their debtor, Baker, acquired any title in common to an undivided portion of the premises. As the respondent exhibits no title to any more than an undivided moiety of the premises, that share may hereafter be assigned to him so as to leave the southerly half or most of it to be held under the title derived from Goodhue. If, upon a petition for partition, the southerly half should be assigned to the respondent, Goodhue might be subjected to an entire loss of his interest in the premises by the effect of his covenants of warranty, contained in his deed to Baker and by his deed of release to McLaflin.

It is not therefore probable, that a court of justice would accept and ratify proceedings in partition, that would have such an effect, if the entire rights of the respondent might be secured to him by an assignment of his share from the northerly portion of the premises. Should partition be hereafter made, by which the share of the respondent should be set off

from the northerly part of the premises, the deed from Goodhue to Baker, and the levy made by the petitioners upon the estate of Baker, would be operative and effectual to convey the remainder to them. For the levy made by Stover on an undivided portion of the premises, as the estate of Baker, could not prevail against their title, because their attachment was made before that of Stover, and also because Baker, by his conveyance from Goodhue, did not acquire any title as a tenant in common to an undivided portion of the premises, and the levy of Stover was made upon an undivided portion.

The petitioners further contend, that they acquired some interest in the premises by the deed of release made by Goodhue to them on August 29, 1844 ; that the releases made between Goodhue and McLaflin should be considered as entirely void, if their intended effect be avoided by the respondent. But such conveyances, made by tenants in common of a portion of the common estate by metes and bounds, as before stated, are not void with respect to other persons than their co-tenants. The petitioners could acquire no interest in the premises by the release deed made by Goodhue to them, for he had then no interest in the premises, upon which that conveyance could operate.

These doctrines will be found to be recognized in the cases cited by the respective counsel in their arguments ; or to be deducible from the principles therein contained.

The petitioners failing to establish any title as tenants in common to an undivided share of the premises, their petition is dismissed with costs for the respondent.