HOLBROOK v. BOWMAN & a.

Title to lands is determined by the law of the jurisdiction in which they are situated.

| 62 | 313 |
| 66 | 288 |
| 62 | 313 |
| 67 | 109 |
| 67 | 110 |
| 67 | 536 |
| 68 | 17 |
| 62 | 313 |
| 69 | 157 |
| 62 | 313 |
| 71 | 584 |

The deed of a tenant in common, conveying a specific parcel of the common land or his interest in such parcel, is valid against his cotenants so far as it can operate without prejudice to them, and a partition made without notice to the grantee does not conclude his interest;—whether such is the law of Vermont—*Quære.*

Under the law of Vermont a title against the state may be acquired to land by long continued adverse possession, notwithstanding a provision in the statute of limitations excepting from its operation lands belonging to the state.

Insensible words in a deed may be rejected.

TROVER, for logs cut in 1871, on lot numbered 23 in the third division of Lemington, Vermont.

Lemington was chartered in 1762 by Gov. Benning Wentworth, who reserved to himself 500 acres, designated on the plan accompanying the charter and accounted as two shares, one share to the Church of England for a glebe lot, three shares for other charitable and public uses, and granted the remaining sixty-four shares to as many individuals. In 1805 the state granted the glebe right to the town for the support of schools. In 1847, the third division, in pursuance of a vote of the proprietors, was surveyed, lotted, and divided among the proprietors. Lot number 23 was drawn to the glebe right. The plaintiff claimed the logs under a lease of the lot to him made by the selectmen of the town in 1870, and the defendant under one Fuller, who was in possession of the lot when the logs were cut. The defendants' evidence tended to prove that Fuller, and those under whom he claimed, had held adverse possession of the lot without interruption from 1832 to 1870. " Any lands given, granted, sequestered, or appropriated to any public or charitable use, or lands belonging to the state," are excepted from the operation of the Vermont statute of limitations. Neither Fuller, nor any one under whom he claimed, was a party to the partition of 1847. In the defendants' chain of title was a deed from Harris to Cooper, in which the premises were described as "bounded south-eastwardly by land of Samuel B. Cooper and Lyman Harris in Canaan." Cooper and Harris owned land in Lemington, adjoining lot 23, and also land in Canaan some two or more miles distant and not on the line of Lemington. The deed did not purport to convey any land not in Lemington. The plaintiff objected to the deed as not covering lot 23, but the court finding that the description was inconsistent with itself and the facts, ruled that the words "in Canaan" should be rejected, and admitted the deed in evidence. By agreement of the parties the cause was taken from the jury, and the questions of law arising upon the foregoing statement of facts and evidence were reserved.

*Ray, Drew & Jordan* (with whom was *George A. Bingham*),

for the plaintiff. Fuller has no title by adverse possession. In 1797 the legislature passed a statute of limitations, section 6 of which relates to the recovery of real estate, viz., " That no writ of right, or other real action; no action of ejectment, or other possessory action of whatever name or nature, shall hereafter be sued, prosecuted, or maintained for the recovery of any lands, tenements, or hereditaments, if the cause of action shall accrue after the passing of this act, but within fifteen years next after the cause of action shall accrue or have accrued to the plaintiff or demandant, or plaintiffs or demandants, or those under whom he, she, or they claim. And that no person having right or title of entry into houses, lands, tenements, or hereditaments shall hereafter thereinto enter, but within fifteen years next after such right of entry shall accrue or have accrued." Laws of Vt. (ed. 1808) vol. 2, *p.* 407, *s.* 6.

October 26, 1801, the legislature passed the following amendment to the statute of limitations passed in 1797, viz., " An act in addition to an act entitled ' An act for the limitation of suits on penal statutes, criminal prosecutions, and actions at law.' Whereas suitable provision was omitted to be made in said act to secure the lands granted for public or pious uses, or lands belonging to this state, therefrom. Be it enacted, etc., . . . That nothing contained in the said act shall be construed to affect the title of any lands granted, given, sequestered, or appropriated for public or pious uses, or lands belonging to this state. And any possessory action, or action of ejectment, may be commenced or prosecuted for the recovery of any such land or lands; anything in the aforesaid act to the contrary notwithstanding." Laws Vt. (ed. 1808) vol. 2, *pp.* 410, 411. This exemption was in force until January 1, 1842, when it was repealed. Rev. Sts. Vt. 378, *s.* 4. The same exemption was reënacted in 1854. Gen. St. Vt. 442, *s.* 4. Therefore the grantors of Fuller could not have gained title by adverse possession for two reasons.

1. Only twelve years elapsed between the repeal and reënactment of the exemption in favor of public lands; while the Vermont statute requires a continuous adverse use for fifteen years. Gen. St. Vt. 442, *s.* 4.

2. There were only five years between the repeal of the exemption and the lotting in 1847, which was an interruption.

It is manifest that the title to a lot of land which had been lotted and assigned to a public right could not be acquired by adverse possession in violation of the statute.

The town of Lemington, after the grant to it of the glebe right in question, could not be divested of its title by adverse possession, whether the land had been surveyed and allotted and a particular lot assigned to that right or not. That share was public lands appropriated to public uses, and the statute of limitations could not run on it while it was held in common and undivided.

When the statute was passed granting the glebe rights to the respective towns in which they were located for the benefit and support of schools, they became public rights set apart for a public purpose. The law-makers, sensible of the natural cupidity of humanity, which consents that public interests may suffer and public rights be sacrificed for the enrichment of the individual, undertaking to protect those rights against that disposition to plunder, passed a statute making it impossible to divest the public of its right by adverse possession.

And, further to insure to such rights a just and equitable division and assignment of the common and undivided property, a law was enacted prescribing the manner in which such lands should be divided, viz., " When the proprietors are met according to warning, and have agreed on the number of acres to be allotted or divided to each proprietor, they shall choose a committee to make a survey thereof, which committee shall consist of one or more persons (who shall be under oath to the faithful discharge of his or their duty), and shall lay out and number one lot (or as many as the proprietors vote) to each right. And when such survey shall be made, they shall return a plan thereof to the proprietors, when met, describing the corner of each lot, and the clerk shall cut as many small square pieces of paper as there are proprietors (including the public rights), and shall number them and put them into a box and shake them, and some disinterested person shall draw them out as the clerk shall call the proprietors' names, beginning at the first name in the charter, and so on until all are drawn; and the clerk shall affix each number to the proprietor's name who drew it." Vt. Laws (ed. 1824) 670, 671.

This statute granted to each holder of an original right in the land an additional and supplemental right, viz., the right to a fair and honest division of the land among the different rights. The individual owner was obliged to protect his right to a share of the land against adverse possession at his peril, but so long as he retained that right, just so long the right to a division under the statute was preserved to him. The right given by the statute fixing the manner of division attached to and followed the right to the land.

When a charter right in the land owned by an individual was lost, the supplemental right was lost with it. The person acquiring the first of those rights also acquired the second, and held those rights in the same manner, subject to the same conditions and limitations as they were held before the title passed. But lands given, granted, sequestered, or appropriated to any public or charitable use under the laws of Vermont, and lands belonging to the state, stood differently. The title to such lands could not be acquired by adverse possession. How then could the town be divested of the right to have its portion of the common lands set apart to it according to the terms of the statute?

When the allotment was made, the statute of limitations on the doctrine of adverse possession no more applied to it than as if the allotment had been made and this lot set apart to the right of the Church of England before Fuller or his grantors ever saw it. It is the same as it would have been if the lot had been drawn to that right immediately after the charter, and owned entirely by it instead of in common and undivided, subject to a division. Till the division was made, it was not known what share would fall to this right. Still, by legal process it was capable of being made certain and definite; and in law that is certain that can be made certain. *Corbett* v. *Norcross*, 35 N. H. 99–119; *Wells* v. *Company*, 47 N. H. 236–259.

The division and allotment could be legally made as provided by the statute above cited, and a jury could not be permitted to find that this public lot had been acquired by adverse possession in violation of the express provisions of the statute of the state. Suppose the grantors of Fuller had acquired title to one of the original private rights in the undivided lands by adverse use: what did they get? Clearly, just what they deprived the former owners of and no more, viz., one sixty-eighth interest in common and undivided, not representing any particular piece of the whole tract in distinction from the rest, but representing that fractional interest in every part of the whole capable of being made definite and certain by an allotment and draft of the lots to the different rights according to the provisions of the statute.

If this were not so, if squatters could by adverse possession acquire the private rights with the further right (regardless of the statute of division) to select and locate their lands at pleasure, the sixty-four private rights might have been so acquired and located upon the most accessible and valuable portions of the common property, and the public rights compelled to a location upon inaccessible and worthless lands. If the shares of other proprietors in the land in question might be acquired by adverse possession, the share of this right appropriated to the support of schools could not be, and the plaintiff is entitled to the extent of his ownership to the timber cut. *Chandler* v. *Spear*, 22 Vt. 399–407; *Briggs* v. *Taylor*, 35 Vt. 57–66.

It was error for the court to reject the words "in Canaan." The reason given is, that the court "found the description inconsistent with itself and the facts." It could not be inconsistent with itself, for there was but one description. If there had been two descriptions, one might be said to be inconsistent with the other. The description was impossible, and the deed should be declared void. The court sitting at *nisi prius*, with the right to construe the deed, undertook to reform and change it. The description given is complete and perfect. How can the court say that the grantor, when he said "in Canaan," meant "in Lemington"?

*Ladd & Fletcher* (with whom was *E. Aldrich*), for the defendants. Long, adverse, and uninterrupted possession by the defendants, or the parties under whom the defendants claim, if it could not establish a right by adverse possession, could and would be evidence from which the jury might find a grant to the defendants, or those under whom they claim. *Town of Victory* v. *Wells*, 39 Vt. 488; *University* v. *Reynolds*, 3 Vt. 542; *Mitchell* v. *Walker*, 2 Aik. 266; *Shumway* v. *Simonds*, 1 Vt. 53; *Sellick* v. *Starr*. 5 Vt. 255; *Turnpike Co.* v. *Bishop*, 11 Vt. 198; *Townsend* v. *Downer*, 32 Vt. 183; *Tracy* v. *Atherton*, 36 Vt. 503; *Crooker* v. *Pendleton*, 23. Me. 339, 341, and cases cited; Gr. Ev., s. 45, note 4; *Roe* v. *Ireland*, 11 East 280; *Goodtitle* v. *Baldwin*, 11 East 488; *Hanes* v. *Peck*, Mart. & Yerg. 228; *Jarboe* v. *McAtee*, 7 B. Mon. 279.

We propose to look a moment at the position in which the case would stand if this question had not been solemnly decided by the Vermont court in our favor. Down to 1847 here was a tract of land in Lemington, now known as the third division, that was owned, we may assume, by sixty-eight persons, sixty-four of whom were natural persons, in common and undivided. Long before 1847, Fuller's grantors in the chain of title entered upon a certain definite piece of said large parcel, and so possessed and occupied it that a full and perfect title thereto would be gained but for the saving clause in the Vermont statute of limitations, with respect to lands granted, etc., to public or charitable use. Now, suppose we were dealing with the statute of limitations alone: what would be the effect of this adverse possession with respect to the $\frac{64}{68}$ which was owned by natural persons? We suppose it will not be argued but that as to those rights they would be acquired by such adverse possession. Indeed, we understand as much to be admitted by the plaintiff in his brief.

Suppose the whole tract had been owned by sixty-eight natural persons, and there was an entry and adverse possession continued long enough to ripen into a title: would it make any difference that the land was owned by sixty-eight persons rather than by one? Certainly not. Then if the right and title of the whole sixty-eight could be gained in that way, why not the right and title of the sixty-four who were tenants in common with the public? The statute protects nothing but the public, rights: what legal doctrine, what principle of the common law, was ever heard of that can be invoked to save those rights from being acquired by the adverse possession? What follows? Fuller's grantors, having acquired in that way the title to $\frac{64}{68}$, were, at the time of the attempted division, in the shoes of the sixty-four with respect to that part of the whole tract of which they had thus held the possession. The title to this lot then stood in this way,—$\frac{64}{68}$ in Fuller's grantor, and $\frac{4}{68}$ in the public (we have nothing to do with but $\frac{1}{68}$, the glebe right), the original proprietors having no interest in it whatever. Is it not clear, that, with respect to this lot, the proprietors can

have no interest, or power, or right, in making partition or division with the artificial persons holding the public rights? What right have they, in making division, to put off the public with a piece of land $\frac{84}{68}$ of which has come to be the absolute property of a disseizor? Is it any compliance with the law, any legal partition, which locates the glebe for the Church of England upon a piece of land to which the sixty-four natural persons, who make the division, have not a scrap of title or interest? We say not. We say the division which leaves the thing in this shape was no legal division at all, no compliance with the statute. If the glebe right was not lost with the other rights by this adverse possession, then as to that lot the partition must be between the common owners, that is to say, between Fuller's grantors and the owners of the public rights; and as to the remainder of the tract, the partition must be between the sixty-four proprietors and the owners of the public rights.

A word as to the construction of the deed from Harris to Cooper. The land attempted to be conveyed lay wholly in Lemington. All the other calls as to boundaries were answered by known monuments on the ground. It was, in fact, bounded on the south-eastwardly by land of Samuel B. Cooper and Lyman Harris, as stated in the deed. But that monument (for the line of an adjoining owner's land is a monument) was not in Canaan, but was in Lemington, where the land conveyed lay. The description was complete and perfect without the repugnant words "in Canaan." According to the plaintiff's contention, the deed ought to fail because those words, carelessly inserted by the scrivener, probably because Harris and Cooper lived in Canaan, appear in it, and make the call as to that boundary absurd and impossible. We shall not stop to cite authority to a point so elementary as that such words should be rejected, not by way of reforming the deed, but in giving it a fair and legal construction.

CARPENTER, J. The rights of the parties in the property in question must be determined by the law of Vermont. The law of this or any other jurisdiction is immaterial, except in so far as it may tend to show what the law of that state is. The case may be considered as if the shares reserved for charitable and public uses were the property of individuals, so that until 1847 the town and sixty-seven natural persons were tenants in common of the third division. The plaintiff contends that a title acquired by adverse possession to the rights of one or more tenants in common in a specific parcel of the common land can have no greater effect than a title to the same interest conveyed by deed; that such a conveyance, though good against the grantor, is as against his cotenants void or voidable at their will, and in making partition may be disregarded; that, inasmuch as in the partition of 1847 lot 23 fell to the town, against which under the statute no right by possession

could be acquired, Fuller's title fails, although he was not a party to or notified of the making of the partition.

Whether in such a case title by possession stands upon precisely the same footing as title by deed (*Wade* v. *Johnson*, 5 Humph. 117, *Florence* v. *Hopkins*, 46 N. Y. 182, *Sullivan* v. *Sullivan*, 66 N. Y. 37, *Braker* v. *Devereaux*, 8 Paige 513), is a question which need not be considered. It may, for the purposes of the case, be assumed that Fuller's title is the same in legal effect as if the sixty-seven individual proprietors had conveyed to him their interest in the lot. If A, B, and C are tenants in common of a tract containing three hundred acres, all severally of equal value, and A and B join in conveying one hundred acres by metes and bounds to D, equity seems to require that upon partition D's title should be confirmed, and that one hundred acres of the land not conveyed should be assigned to C and fifty acres each to A and B. According to the plaintiff's doctrine, C may bring his petition for partition against A and B without making D a party or giving him notice, and if the committee happen to assign D's lot to C, D takes nothing, while both A and B take double what justly belongs to them; if they assign it to either A or B, D holds it by estoppel, the one to whom it is assigned gets nothing, and the other grantor twice the quantity to which he is equitably entitled. To avoid the expense of legal proceedings, they may divide the whole into three equal parts, of which the tract conveyed to D is one, and draw lots for them, as was done in this case. In that event D would have two chances in three to hold his land, while A and B would have an equal chance of losing the whole, and each a chance of obtaining twice what fairly belongs to him. They need not resort to legal proceedings, or to the ceremony of casting lots; they may make by agreement any division which the law warrants, and convey to each other accordingly. They may, by bargain between themselves, give to C in severalty the lot conveyed to D, and thus deprive him of the land. By the first named method of partition, D's title would depend upon the action of the committee; by the second, upon the chances of the lot; and by the third, upon the conscience of his grantors. It would not affect the legal aspect of the transaction if the three inherited the land, and C, at the time of their ancestor's decease and of the execution of the deed to D, were erroneously supposed to be dead. In that case, says *Jackson*, J., in *Varnum* v. *Abbot*, 12 Mass. 478, "it would be highly unjust and absurd that his return should wholly avoid such a conveyance made by the others in his absence. It is just that he should not be prejudiced by it. But there is no reason why the other cotenants should by this accident be enabled to avoid their own contract, and to reclaim the land which they had fairly sold for a valuable consideration."

It has been held that a tenant's conveyance of a specific parcel of the common land, or his undivided part of such parcel, is, under

some circumstances, valid against his cotenants.    It has been said, for example, that where the lands lie in different counties, or where a part of them has been assigned as dower, a tenant's deed, conveying his share of the land in one county, or his share in the reversion of dower, or in the residue of the land, is binding upon his cotenants.   *Martin* v. *Collester*, 38 N. H. 458; *Peabody* v. *Minot*, 24 Pick. 329.   If a tenant in common conveys a distinct parcel, or his interest in such parcel. to a stranger, and afterwards conveys the remainder of the common lands or his interest therein to the same person or to his cotenants, or if his cotenants subsequently convey the parcel or their interest therein to the same or to another person or to their cotenant, the conveyances are not invalid.   *Varnum* v. *Abbot*, 12 Mass. 477, 478; *Crocker* v. *Tiffany*, 9 R. I. 505; *Stevens* v. *Norfolk*, 46 Conn. 227; *Reed* v. *Spicer*, 27 Cal. 58; *Dall* v. *Brown*, 5 Cush. 289.   The doctrine of these cases appears to rest upon the ground that the cotenants have expressly or by implication assented to and ratified the conveyances, or that, by reason of the situation of the property or nature of their estate therein, they cannot, upon partition, be prejudiced by them.   So it has been held that a tenant's deed of a parcel or of his share in a parcel of the common land is effective in all cases to give the grantee the same right to the possession, use, and enjoyment of the property which the grantor had, until partition is made, upon the ground that the exercise of that right cannot injure the cotenants; the deed cannot be avoided except by proceedings for partition.   *Ballou* v. *Hale*, 47 N. H. 347; *Rising* v. *Stannard*, 17 Mass. 282; *Stark* v. *Barrett*, 15 Cal. 361.   Upon partition, a tenant is entitled to no particular part of the common property, but only to his due proportion in quantity and quality of the whole.   If that can be given him out of the lands not conveyed by his cotenant, he has no just cause to complain of the conveyance.   The general doctrine deducible from the numerous authorities on the subject is, that a tenant's deed of a specific part, or of his share of such part, of the common land is valid against his cotenants, except in so far as it may injuriously affect their right to a just division.   The grantee takes a good title to all that is conveyed to him, unless upon partition it is found necessary to take the whole or a part of it in order to give the cotenants their equitable share of the property, in view not only of the value of the whole and of its several parts, but also of the convenience of the parties, and all other circumstances.   *Thompson* v. *Barber*, 12 N. H. 563; *Whitton* v. *Whitton*, 38 N. H. 134; *Bartlet* v. *Harlow*, 12 Mass. 347; *Nichols* v. *Smith*, 22 Pick. 316; *Brown* v. *Bailey*, 1 Met. 257; *Hartford Ore Co.* v. *Miller*, 41 Conn. 132; *Soutter* v. *Porter*, 27 Me. 405; *Tilton* v. *Palmer*, 31 Me. 486; *Bigelow* v. *Littlefield*, 52 Me. 24; *Gates* v. *Salmon*, 35 Cal. 576; *Sutter* v. *San Francisco*, 36 Cal. 112; *Campau* v. *Godfrey*, 18 Mich. 27; *Butler* v. *Roys*, 25 Mich. 53; *Robinett* v. *Preston*, 2 Rob. (Va.) 273; *McKee* v. *Barley*, 11

Grat. 340; *Cox* v. *McMullin*, 14 Grat. 82; *White* v. *Sayre*, 2
Ohio 110; *Treon* v. *Emerick*, 6 Ohio 391; *Dennison* v. *Foster*, 9
Ohio 126; *Barnhart* v. *Campbell*, 50 Mo. 597; *Story* v. *Johnson*,
1 Younge & Coll. (Exch.) 538; 2 *ib.* 586; 1 Sto. Eq. Jur., s. 656, *c*;
*St. Felix* v. *Rankin*, 3 Edw. Ch. 323; *Conklin* v. *Conklin*, 3 Sandf.
Ch. 64, and cases before cited.

No one can be deprived of his rights or property by judicial
process, without notice and an opportunity to make his defence.
*Brown* v. *Sceggell*, 22 N. H. 552; *King* v. *Chancellor of Cambridge*,
1 Str. 567. The rights of a grantee under a conveyance by a tenant
in common of a specific part of the common land are not affected
by judicial proceedings for a partition to which he is not a party
and of which he has no notice. Still less can the cotenants be
permitted to determine for themselves how far the deed shall be
operative and how far inoperative, and by their determination con-
clude the interest of the grantee. The fact that his interest is
liable to be defeated by a partition renders it all the more impor-
tant to him that he have an opportunity to be heard. " He has,"
says *Bell*, J., in *Whitton* v. *Whitton*, *supra*, " an interest in the
question whether the property shall be divided, and, if so, in what
manner, precisely so much greater than an ordinary tenant in com-
mon as he is liable to have his interest assigned to another in par-
tition, and his whole estate defeated without redress or compensa-
tion."  There may, perhaps, be cases where no partition can be had
by legal means unless such a grantee can be made a party, as, for
example, if A and B are tenants in common of a farm, and A con-
veys his interest in the north half to C and in the south half to D.
*Gates* v. *Salmon*, *supra*. *Dicta* may be found which give more or
less countenance to the idea that a partition to which such a grantee
is not a party is binding upon him. Where deeds or levies have
been held invalid for the reason under consideration, it has been
said that if, upon partition, the land conveyed or levied upon hap-
pens to fall to the share of the grantor or judgment debtor, the
deed or levy is good by estoppel, with no intimation that the
grantee or levying creditor should or could be made a party to
the proceedings. *French* v. *Lund*, 1 N. H. 42; *Bartlet* v. *Harlow*,
12 Mass. 354; *Varnum* v. *Abbot*, 12 Mass. 476; *Brown* v. *Bailey*,
1 Met. 257; *Robinett* v. *Preston*, 2 Rob. (Va.) 273; *McKee* v.
*Barley*, 11 Grat. 340. In *Soutter* v. *Porter*, 27 Me. 405, it is
suggested that a partition unjust to such grantee would not be con-
firmed by the court. When the question has come directly before
the court for decision, it has been held in all the cases examined,
with a single exception, that a grantee under a deed of the charac-
ter in question is a proper and necessary party to proceedings for
partition, and that unless he is made a party, his interests are not
concluded or affected by the division. *Whitton* v. *Whitton*, 38
N. H. 127; *Salmon* v. *Gates*, 35 Cal. 576; *Sutter* v. *San Francisco*,
36 Cal. 112; *Wade* v. *Johnson*, 5 Humph. 117; 1 Sto. Eq. Jur.,

*s.* 656, *c*; *Story* v. *Johnson*, 1 Younge & Coll. (Exch.) 538; *Campau* v. *Godfrey*, 18 Mich. 27; *Butler* v. *Roys*, 25 Mich. 53; *Bigelow* v. *Littlefield*, 52 Me. 24; *Hinman* v. *Leavenworth*, 2 Conn. 244, note. If he cannot himself maintain a petition for partition (*Blossom* v. *Brightman*, 21 Pick. 283, 285, *Bartlet* v. *Harlow*, *Peabody* v. *Minot*, *Soutter* v. *Porter*, *supra*), it may not follow that he cannot or that he must not be made a party defendant to such petition. In *Morrill* v. *Foster*, 25 N. H. 333, it was held that a petition for partition may be properly brought against any person interested in the property, the statute requiring the names of all the owners or persons interested to be stated. Rev. St., *c.* 206, *s.* 2; G. L., *c.* 247, *s.* 2. The statute of Vermont seems to be in this particular substantially the same. Slade's St. (1824), *c.* 19, *s.* 3; Gen. St. (1863), *c.* 45, *s.* 3.

In *Wade* v. *Johnson*, above cited, the precise question was presented. It was ejectment brought in 1842 for a lot of 126 acres, part of a larger tract of which the plaintiff and her eleven co-heirs were tenants in common. The defendant claimed title by adverse possession, and the right of all the heirs except that of the plaintiff in the premises had, prior to 1841, become barred by the statute of limitations. In 1841, by judicial proceedings, to which the defendant was not a party, partition was had, and the land in question was assigned to the plaintiff. It was held that the plaintiff was nevertheless a tenant in common with the defendant, and entitled to recover only one undivided twelfth part of the premises. The court say,—"If at the end of 1840 the heirs, instead of the proceedings in the record of partition set forth, had each released his share to Mrs. Wade by deed, such share being then barred by the adverse possession and the statute, would she have been by the operation of such deeds in a better condition than [her grantors] if they had sued themselves? It will scarcely be so contended, and yet such deeds would have been entitled to all the legal effect which can be claimed for the act of the commissioners in the judicial proceeding for partition."

If such is the law of Vermont, Fuller's rights are not affected by the partition of 1847. He and the town are tenants in common of lot 23, and consequently this action cannot, upon the facts reported, be maintained. *Ballou* v. *Hale*, 47 N. H. 347; *Wait* v. *Richardson*, 33 Vt. 190. The court of that state appears to have held the contrary doctrine. *Broughton* v. *Howe*, 6 Vt. 266, decided in 1834, was a bill in equity to set aside a partition. One of three tenants in common conveyed to the plaintiff the north one third of the common land. Afterwards the two other cotenants, without the plaintiff's knowledge, procured the appointment by the probate court of a committee to make partition. The committee, also without the plaintiff's knowledge, assigned the north one third to one of said two cotenants. The court held that the plaintiff was not entitled to notice of the proceedings, and that the partition was valid.

No authority was cited, and at the time of the decision comparatively little touching the question was to be found in the books. In view of the later decisions and of the reasons upon which they rest, it may be doubted whether the courts of that state, if now called upon to consider the question, would sustain the authority of that case.

Upon a trial of the cause the evidence may take such a course as to render a determination of the law of Vermont upon this point unnecessary, or if essential to the disposition of the case, it may be found as a fact at the trial term.   _Beach_ v. _Workman_, 20 N. H. 379 ; _Watson_ v. _Walker_, 23 N. H. 471 ; _Holton_ v. _Gleason_, 26 N. H. 501 ; _Ferguson_ v. _Clifford_, 37 N. H. 86.

If it turns out. as the case finds the evidence tended to show, that Fuller and those under whom he claims held possession of the lot adversely and without interruption from 1832 to 1870, the cases cited by the defendants appear to establish their position that, according to the law of Vermont, Fuller's title may be found good against the town, notwithstanding the exception of the statute in its favor, as well as against the other proprietors. _University_ v. _Reynolds_, 3 Vt. 542, decided in 1831, was an action of ejectment commenced in 1821 to recover possession of lots 98 and 99 in Alburgh.   In 1781 the state granted a charter of that township to a number of persons, reserving one seventieth for the use of a seminary or college.   The proprietors not having made any division of the land under the charter, nor successfully asserted their claim to it, the whole town was afterwards settled and occupied by persons none of whom claimed under the original grantees. The university was founded in 1791, and took title to the one seventieth reserved in the charter for the use of a college.   The defendant's testator, and those under whom he claimed, had been in possession of the demanded premises since 1785, claiming the same in their own right and adversely to all the world.   It was held that the provision in the statute of limitations, exempting from its operation all lands granted, sequestered, or appropriated to public, pious, and charitable uses, extended to the case, but that, from the length of time the defendant had been in possession, the jury might and ought to presume in his favor either an antecedent grant, or a surrender of the charter under which the plaintiff claimed, or an extinguishment of any title which ever could have been derived under it.   The court say, " A possession of lands for the period of fifteen years, where the statute of limitations will operate, is an absolute bar to any claim from the rightful owner. . . . 'In cases to which the statute does not apply, a long continued possession affords presumptive evidence of title.   .   .   . An act of parliament, a grant from the crown, a deed, in fact anything, may be presumed from length of time where such act, grant, or deed could have been lawfully passed, made, or given.   .   .   . In cases of prescription, this possession is conclusive as to the right.

Certain facts being found to exist, the right is confirmed as matter of law, and the possession is considered as conclusive of the right as if a deed or charter were actually produced. . . . There are certain other cases in which the presumption is not considered as altogether a legal inference, but must be made by the jury, and yet the court advise or direct the jury to make such presumption. . . . This second class of presumptions, where the jury are advised to make them, it will be found, applies to corporeal as well as incorporeal hereditaments. Thus, a grant of land may be presumed as well as of a fishery. . . . Where there has been a long continued possession which, in its origin, was or would have been unlawful unless there had been a grant, or if the origin of such possession cannot be accounted for without considering it either as unlawful or as lawful by virtue of a grant, the court will not infer that the possession was unlawful but direct the jury to presume such a grant, or anything which will confirm the possession." This doctrine is fully recognized and affirmed in the comparatively recent case of *Victory* v. *Wells*, 39 Vt. 488. In this case it appeared that by the charter of the town of Victory in 1781, the minister right was reserved from the grant, and when located was to remain inalienably appropriated for the uses and purposes for which it was assigned, and to be under the charge, direction, and disposal of the inhabitants of the township forever. The lot in question was drawn to this right. The defendant possessed and improved the lot as a homestead farm adversely to all the world, without any countervailing claim having been interposed from 1825 to 1858. It was held, that it was competent for the state to assume the control and disposal of the right reserved in the charter; that the legislature had full right and power to grant the lot thus reserved to any person it might deem fit; and that such possession by the defendant would fully warrant the jury in finding, as matter of fact, that he was holding under some valid grant from the state. These cases must be deemed decisive of the law in Vermont: whether it is the law in this state, or elsewhere, there is no occasion to inquire.

The evidence tending to show that Fuller and those under whom he claims were in possession claiming the lot adversely and without interruption from 1832 to 1870, must be submitted to the jury with instructions in accordance with the doctrine of the foregoing cases. If the town had no power to convey the fee (*Bush* v. *Whitney*, 1 D. Chip. 369, *Lamson* v. *New Haven*, 2 Vt. 14, *Williams* v. *Goddard*, 8 Vt. 492), no such conveyance can be presumed. But a lease as well as a conveyance in fee may be presumed. *Sellick* v. *Starr*, 5 Vt. 255. The town being specially authorized by the legislature could convey, or the legislature with the assent of the town could grant, the fee (*Poultney* v. *Wells*, 1 Aik. 180; *White* v. *Fuller*, 38 Vt. 201), and either may be presumed, if necessary to quiet Fuller's possession.

The ruling in respect to the deed Harris to Cooper was correct. Other questions, which may not arise at the trial, are not considered.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.